**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **WEST AFRICAN VENTURES** | § | |
| **LIMITED and SEA TRUCKS** | § | |
| **GROUP FZE** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-cv-04124** |
| **NED M. FLEMING, III,** | § | |
| **CRAIG JENNINGS AND** | § | |
| **SUNTX CAPITAL II MANAGEMENT** | § | |
| **CORP.** | § | |
| | § | |
| *Defendants.* | § | |

### FIRST AMENDED COMPLAINT[1]

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Plaintiffs, West African Ventures Limited and Sea Trucks Group FZE (collectively, "Plaintiffs") and file this Original Complaint for damages against Defendants, Ned M. Fleming, III, Craig Jennings and SunTx Capital II Management Corp. (collectively, "Defendants"), and would respectfully show the Court as follows:

### PARTIES

1.      West African Ventures Limited is a limited company organized under the laws of Nigeria, with its principal place of business in Lagos, Nigeria.

2.      Sea Trucks Group FZE is a Free Zone Enterprise organized under the laws of the Emirate of Sharjah, United Arab Emirates, with its principal place of business in Sharjah, United Arab Emirates.

---

[1] Plaintiffs file this First Amended Complaint in accordance with this Court's April 11, 2022 Order (Doc. No. 13).

3.      Ned M. Fleming, III,[2] is an individual and citizen of the State of Texas, and may be served with process at 5420 LBJ Freeway, Suite 1000, Dallas, TX 75240; or wherever he may be found.

4.      Craig Jennings, is an individual and citizen of the State of Texas, and may be served with process at Two Lincoln Center, 5420 LBJ Freeway, Suite 1000, Dallas, TX 75240; 1700 Hidalgo Ln., Frisco, TX 75034; or wherever he may be found.

5.      SunTx Capital II Management Corp. is a Texas corporation with its principal place of business in Dallas, Texas.  SunTX Capital II Management Corp. may be served through its registered agent, Craig Jennings, at Two Lincoln Center, 5420 LBJ Freeway, Suite 1000, Dallas, TX 75240; 1700 Hidalgo Ln., Frisco, TX 75034; or wherever he may be found.

## JURISDICTION

6.      This Honorable Court has diversity jurisdiction over the above styled proceeding under 28 U.S.C. § 1332 because complete diversity exists and the matter in controversy exceeds the sum of $75,000.  Specifically, this action involves citizens of a State and citizens of foreign states where none of the citizens of foreign states are lawfully admitted for permanent residence in the United States or domiciled in the same State.  *See* 28 U.S.C. §1332(a)(2).  Texas law applies to this dispute according to the express terms of the payment guarantees underlying this action.

## VENUE

7.      Venue is proper in this Honorable Court under 28 U.S.C. § 1391(b)(2).  Additionally, the payment guarantees at issue require suit in the United States District Court for the Southern District of Texas.

---

[2] Ned M. Fleming, III's name was misspelled in Plaintiffs' Original Complaint.  This Amended Complaint reflects the correct spelling.

## CONDITIONS PRECEDENT

8.      All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## FACTUAL BACKGROUND

9.      Plaintiff West African Ventures Limited ("WAV") is a Nigerian limited company, headquartered in Lagos, Nigeria, that owns and operates vessels that are used in the offshore oil and gas industry in West Africa.  Plaintiff Sea Trucks Group FZE ("STG") is a U.A.E. based business that provides equipment and personnel to the offshore oil and gas industry.

10.      In 2015-2017, WAV and STG provided vessels, equipment, and personnel services to subsidiaries of Ranger Offshore, Inc. ("Ranger")—Ranger Subsea Nigeria Limited ("RSNL"), which chartered the vessels, and Ranger International Limited ("RIL"), which rented equipment and personnel. The first of these projects in 2015 was for Shell (the "Shell Project"), and involved laying a pipeline from the shore through a tight curve back to an estuary platform in about 50 feet of water in the mouth of the Furcates River.  The second in 2016 was for Conoil (the "Conoil Project"), and involved laying a pipeline in less than 100 feet of water.

**A.  The Shell Project**

11.      On April 27, 2015, WAV entered into three charterparties with Gladtrico International Limited ("Gladtrico") for the hire of three vessels for the Shell Project.  That same day, Gladtrico assigned the charterparties to RSNL.  WAV and RSNL entered into another charterparty for a fourth vessel on August 1, 2015.  Additionally, STG and RIL entered into a Contract for Equipment Rental and Personnel Services on June 12, 2015.

12.     During the course of the Shell Project, WAV and STG issued numerous invoices pursuant to the charterparties and Contract for Equipment Rental and Personnel Services.  RSNL and RIL, however, missed several payments and the total amount owed began to accumulate to the point where WAV and STG became concerned about the large amount outstanding on the project.  Plaintiffs could have terminated their relationship with RSNL and RIL due to the large amounts outstanding on the Shell Project.  Rather than terminating the agreements or seeking a judicial remedy, WAV and STG sought Payment Guarantees from RSNL and RIL's parent company, Ranger, and Ranger's equity sponsor, SunTx Capital Partners II GP, LP (the "SunTx Limited Partnership"). The purpose of the Payment Guarantees was to ensure Plaintiffs were paid for the vessels, equipment, and personnel provided if RSNL and RIL failed to pay WAV and STG's invoices on the Shell Project. Under the terms of the Payment Guarantees, Ranger and the SunTx Limited Partnership would step in and provide payment if RSNL or RIL were unable or refused to make payment for the vessels, equipment, and personnel provided.

13.     On November 25, 2015, Ranger executed two Payment Guarantees, one in favor of WAV and one in favor of STG.  That same day, the SunTx Limited Partnership executed two Payment Guarantees, one in favor of WAV and one in favor of STG.  The two Payment Guarantees executed on behalf of SunTx Capital Partners II GP, LP were signed by Ned N. Fleming, III ("Fleming") as president of SunTx Capital II Management Corp. (the "SunTx General Partner"), the general partner of SunTx Capital Partners II GP, LP.  With the promise that WAV and STG could look to the SunTx Limited Partnership for payment should RSNL and RIL default on their payment obligations, WAV and STG decided to move forward with and continue providing equipment and personnel for the Shell Project.

4

**B.  The Conoil Project**

14.      On January 19, 2016, WAV and RSNL entered into three charterparties for the hire of three vessels for the Conoil Project.  On February 13, 2016, STG and RIL entered into a Contract for Equipment Rental and Personnel Services.  Since WAV and STG had trouble securing payment from RSNL and RIL on the Shell Project, WAV and STG were hesitant about entering into another business relationship with RSNL and RIL for the Conoil Project. In order to protect themselves from default, and to provide security that they would be paid for the Conoil Project, WAV and STG requested that Ranger and its equity sponsor, the SunTx Limited Partnership, execute additional payment guarantees that would apply to the invoices issued on the Conoil Project.

15.      On February 16, 2016, Ranger executed two Payment Guarantees, one in favor of WAV and one in favor of STG.  That same day, the SunTx Limited Partnership executed two Payment Guarantees, one in favor of WAV and one in favor of STG.  The two Payment Guarantees executed on behalf of the SunTx Limited Partnership were signed by Craig Jennings ("Jennings") as V.P. and CFO of the SunTx General Partner.

**C.  Ranger and SunTx Refuse to Honor the Payment Guarantees Leading to the Underling Lawsuit and Final Judgment**

16.      RSNL and RIL made some payments to WAV and STG for the Shell Project; however, RSNL and RIL failed to pay over $1 million for the vessels, equipment, and personnel services provided by WAV and STG.  RSNL and RIL made no payments on the Conoil Project, refusing to pay over $34 million for the vessels, equipment, and personnel services provided by WAV and STG.  As a result, and pursuant to the Payment Guarantees, WAV and STG made demand on Ranger and the SunTx Limited Partnership, for payment, but no payments were made.

17.      Due to Ranger's and the SunTx Limited Partnership's refusal to pay WAV and STG for the vessels, equipment and personnel services provided, WAV and STG filed suit for payment

under the Payment Guarantees in the United States District Court for the Southern District of Texas, which was the contractually agreed upon venue under each of the Payment Guarantees (the "underlying suit").[3]  The Payment Guarantees are, by their terms, subject to Texas law.

18.     Prior to trial on the underlying suit, the District Court granted Plaintiffs' *Motion for Partial Summary Judgment on Plaintiffs' Claims Relating to the Payment Guarantees* for the Shell Project and the Conoil Project as to liability, but not damages.  In granting these motions, the District Court properly concluded that Ranger and the SunTx Limited Partnership's liability had been triggered under the Payment Guarantees.

19.     The matter then proceeded to trial on the issue of damages and Final Judgment in favor of WAV and STG and against Ranger and the SunTx Limited Partnership, jointly and severally, was entered on March 12, 2020.  A true and correct copy of the Final Judgment issued in Civil Action No. 4:17-CV-00548 in the United States District Court for the Southern District of Texas is attached hereto as Exhibit A and hereby incorporated by reference.  In the Final Judgment, WAV was awarded the following damages against the SunTx Limited Partnership:

- $730,372 for actual damages related to the Shell Project;
- $29,876,533 for actual damages related to the Conoil Project;
- $37,813 in pre-judgment interest on its actual damages with respect to the Shell Project;
- $1,546,768 in pre-judgment interest on its actual damages with respect to the Conoil Project;
- Post-judgment interest on its damages with respect to the Shell Project at the rate of 1.5% per annum beginning February 5, 2020 until paid, this amount being $29.95 per day;
- Post-judgment interest on its damages with respect to the Conoil Project at the rate of 1.5% per annum beginning February 5, 2020 until paid, this amount being $1,224.94 per day;
- $391,652.02 in attorneys' fees and $33,967.63 in recoverable costs as a result of WAV having to prosecute the underlying lawsuit;

---

[3] *West African Ventures Limited and Sea Trucks Group FZE v. Ranger Offshore, Inc. and SunTx Capital Partners II GP, LP*; Civil Action No. 4:17-CV-00548; In the United States District Court for the Southern District of Texas.

- $60,000 to reimburse WAV for its attorneys' fees and expenses in connection with SunTx Capital Partners II GP, LP's unsuccessful appeal to the Fifth Circuit.

STG was awarded the following damages against SunTx Limited Partnership:

- $1,300,404 for actual damages related to the Shell Project;
- $4,774,599 for actual damages related to the Conoil Project;
- $67,324 in pre-judgment interest on its actual damages with respect to the Shell Project;
- $247,190 in pre-judgment interest on its actual damages with respect to the Conoil Project;
- Post-judgment interest on its damages with respect to the Shell Project at the rate of 1.5% per annum beginning February 5, 2020 until paid, this amount being $53.32 per day;
- Post-judgment interest on its damages with respect to the Conoil Project at the rate of 1.5% per annum beginning February 5, 2020 until paid, this amount being $195.76 per day;
- $74,600.38 in attorneys' fees and $6,470.03 in recoverable costs as a result of WAV having to prosecute the underlying lawsuit;
- $60,000 to reimburse STG for its attorneys' fees and expenses in connection with SunTx Capital Partners II GP, LP's unsuccessful appeal to the Fifth Circuit.

**D. Defendants Never Intended to Honor the Payment Guarantees**

20.     Leading up to the Final Judgment, the SunTx Limited Partnership indicated that it had no assets which could satisfy any judgment. The SunTx Limited Partnership has maintained that position since entry of the Final Judgment, including after an unsuccessful appeal of the Final Judgment to the Fifth Circuit. As it turns out, the SunTx Limited Partnership never had adequate assets in order to satisfy its payment obligations under the Payment Guarantees. Moreover, to the extent the SunTx Limited Partnership did have capital which could have been used to satisfy its payment obligations, at least in part, that capital was clearly earmarked for some other expenditure because it was undoubtedly exhausted by the time the Payment Guarantees were called upon. In short, the Payment Guarantees, which Plaintiffs believed provided themselves with security that millions of dollars would be paid, were worthless.

21.     At all times relevant, the SunTx General Partner was the general partner of the SunTx Limited Partnership.  Fleming was the President of the SunTx Capital General Partner and signed the Payment Guarantees for the Shell Project on behalf of the general partnership.  Jennings was the Vice President and Chief Financial Officer of the SunTx General Partner and signed the Payment Guarantees for the Conoil Project on behalf of the general partnership.  In their respective positions with the SunTx General Partner, Fleming and Jennings had knowledge of the financial condition of the SunTx Limited Partnership and whether or not the SunTx Limited Partnership had capital and assets which could be used to satisfy its payment obligations.

22.     More than a year and a half has elapsed since the time that the District Court entered Final Judgment in the underlying suit and the judgment remains unpaid.  At the time Fleming and Jennings executed the Payment Guarantees, they knew that the SunTx Limited Partnership did not have adequate assets to satisfy its payment obligations under the Payment Guarantees.  When the Payment Guarantees were executed, the SunTx Limited Partnership did not have the means of fulfilling its payment obligations, nor did the SunTx Limited Partnership have the means of fulfilling its payment obligations at any point in time after the Payment Guarantees were executed. The SunTx Limited Partnership was grossly undercapitalized at the time Plaintiffs were engaged to provide vessels, equipment, and personnel services to the Shell and Conoil Projects and entered into the Payment Guarantees.  Plaintiffs have come to learn that the SunTx Limited Partnership has never had any employees and does not generate revenue.  In essence, the SunTx Limited Partnership is and was a shell company with either no capital, very little capital, or capital earmarked for some other expenditure such that it was exhausted by the time Plaintiffs sought payment under the Payment Guarantees.  The Payment Guarantees were at all relevant times

functionally worthless and did not provide Plaintiffs with any security upon an event of default by one or all of the Ranger entities.

23.     Defendants knew the SunTx Limited Partnership could never fulfill its obligations under the Payment Guarantees.  Fleming and Jennings, as officers of the SunTx General Partner, knew the financial condition of the SunTx Limited Partnership; in particular, that the SunTx Limited Partnership did not have the assets or capital, or the means of liquidating sufficient assets, to make payment to Plaintiffs, if called upon.  Fleming and Jennings had knowledge of the SunTx Limited Partnership's inability to meet its financial obligations to Plaintiffs but proceeded to fraudulently induce Plaintiffs to continue to perform under the various charterparty agreements and Contracts for Equipment Rental and Personnel Services.  As a result, Plaintiffs continued to do business with RSNL and RIL on the Shell Project and entered into agreements for the Conoil Project, which indirectly benefited Defendants, but has led to Plaintiffs suffering millions of dollars in damages.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### Count 1 – Common Law Fraud

24.     Plaintiffs incorporate the above numbered paragraphs 1 through 23 as if fully set forth herein.

25.     The Payment Guarantees provide that the Guarantor, the SunTx Limited Partnership, unconditionally and irrevocably guaranteed as surety to WAV and STG the full and prompt payment of all amounts owed by RSNL and RIL. The Payment Guarantees were executed by Fleming and Jennings (collectively the "Individual Defendants") in their capacity as officers and directors of the SunTx General Partner.  As such, the Individual Defendants and the SunTx

General Partner represented to Plaintiffs that the SunTx Limited Partnership had the financial ability to satisfy the Payment Guarantees and intended to honor its obligations, if called upon.

26.     These representations were made by Defendants in the Payment Guarantees when Defendants executed the Payment Guarantees on behalf of the SunTx General Partnership.  These representations were material to Plaintiffs in their decision to continue to provide vessels, equipment, and personnel services to the Shell Project and for Plaintiffs to enter into agreements to provide vessels, equipment, and personnel services to the Conoil Project.  Plaintiffs were concerned about the large amount outstanding on the Shell Project; rather than terminating the relationship with RSNL and RIL, Plaintiffs were persuaded by the Payment Guarantees to continue their work on the Shell Project.  Additionally, as a result of the payment troubles on the Shell Project, Plaintiffs were concerned about entering into contracts for the Conoil Project; however, Plaintiffs thought their concerns were alleviated after Payment Guarantees were negotiated for the Conoil Project.

27.     At the time that the representations were made, the Individual Defendants and the SunTx General Partner knew that the SunTx Limited Partnership either did not have the financial ability to meet the payment obligations set forth in the Payment Guarantees because there were insufficient assets and capital on hand or that any assets the SunTx Limited Partnership did have were already committed to other expenditures.  Further, at the time the representations were made, the Individual Defendants and the SunTx General Partner knew that the SunTx Limited Partnership had no intention of honoring the Payment Guarantees.  Defendants made these representations knowing they were false, recklessly, or as positive assertions without knowledge of their truth.

28.     Defendants intended for Plaintiffs to rely on the false representations regarding the SunTx Limited Partnership's ability and intent to guarantee payment so that Plaintiffs would

continue performing under the charterparties and Contract for Equipment Rental and Personnel Services for the Shell Project, as well as enter into charterparties and a Contract for Equipment Rental and Personnel Services for the Conoil Project.

29.     Plaintiffs justifiably relied on the Defendants' false representations and continued to perform under the charterparties and Contract for Equipment Rental and Personnel Services for the Shell Project, as well as enter into charterparties and a Contract for Equipment Rental and Personnel Services for the Conoil Project.  But for Defendants' misrepresentations, Plaintiffs would not have continued with the Shell Project, entered into agreements for the Conoil Project, or provided over $30 million worth of vessels, equipment, and personnel to RSNL and RIL.

30.     These false representations directly and proximately caused injury to the Plaintiffs resulting in over $36 million in damages.

31.     Plaintiffs' injury resulted from the Defendants' actual fraud, gross negligence, or malice which entitles Plaintiffs to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code section 41.003(a).

## Count 2 – Fraudulent Inducement

32.     Plaintiffs incorporate the above numbered paragraphs 1 through 31 as if fully set forth herein.

33.     The Payment Guarantees provide that the Guarantor, the SunTx Limited Partnership, unconditionally and irrevocably guaranteed as surety to WAV and STG the full and prompt payment of all amounts owed by RSNL and RIL. The Payment Guarantees were executed by the Individual Defendants in their capacity as officers and directors of the SunTx General Partner.  As such, the Individual Defendants and the SunTx General Partner represented to

Plaintiffs that the SunTx Limited Partnership had the financial ability to satisfy the Payment Guarantees and intended to honor its obligations, if called upon.

34.     These representations were made by Defendants in the Payment Guarantees when Defendants executed the Payment Guarantees on behalf of the SunTx General Partnership.  These representations were material to Plaintiffs in their decision to continue to provide vessels, equipment, and personnel services to the Shell Project and for Plaintiffs to enter into agreements to provide vessels, equipment, and personnel services to the Conoil Project.  Plaintiffs were concerned about the large amount outstanding on the Shell Project; rather than terminating the relationship with RSNL and RIL, Plaintiffs were persuaded by the Payment Guarantees to continue their work on the Shell Project.  Additionally, as a result of the payment troubles on the Shell Project, Plaintiffs were concerned about entering into contracts for the Conoil Project; however, Plaintiffs thought their concerns were alleviated after Payment Guarantees were negotiated for the Conoil Project.

35.     At the time that the representations were made, the Individual Defendants and the SunTx General Partner knew that either the SunTx Limited Partnership did not have the financial ability to meet the payment obligations set forth in the SunTx Payment Guarantees because there were insufficient assets and capital on hand or that any assets the SunTx Limited Partnership did have were already committed to other expenditures.  Further, at the time the representations were made, the Individual Defendants and the SunTx General Partner knew that the SunTx Limited Partnership had no intention of honoring the Payment Guarantees.  Defendants made these representations knowing they were false, recklessly, or as positive assertions without knowledge of their truth.

36.     Defendants intended for Plaintiffs to rely on the false representations regarding the

SunTx Limited Partnership's ability and intent to guarantee payment so that Plaintiffs would continue performing under the charterparties and Contract for Equipment Rental and Personnel Services for the Shell Project, as well as enter into charterparties and a Contract for Equipment Rental and Personnel Services for the Conoil Project. By concealing, omitting, or misstating these facts concerning the SunTx Limited Partnership's ability and intent to honor the Payment Guarantees, Defendants fraudulently induced Plaintiffs into continuing with the Shell Project and entering into contracts for the Conoil Project.

37.     Plaintiffs justifiably relied on the Defendants' false representations and continued to perform under the charterparties and Contract for Equipment Rental and Personnel Services for the Shell Project, as well as enter into charterparties and a Contract for Equipment Rental and Personnel Services for the Conoil Project.  But for Defendants' misrepresentations, Plaintiffs would not have continued with the Shell Project, entered into agreements for the Conoil Project, or provided over $30 million worth of vessels, equipment, and personnel to RSNL and RIL.

38.     These false representations directly and proximately caused injury to the Plaintiffs resulting in over $36 million in damages.

39.     Plaintiffs' injury resulted from the Defendants' actual fraud, gross negligence, or malice which entitles Plaintiffs to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code section 41.003(a).

## Count 3 – Fraud by Nondisclosure

40.     Plaintiffs incorporate the above numbered paragraphs 1 through 39 as if fully set forth herein.

41.     The Payment Guarantees provide that the Guarantor, the SunTx Limited Partnership, unconditionally and irrevocably guaranteed as surety to WAV and STG the full and

13

prompt payment of all amounts owed by RSNL and RIL. The Payment Guarantees were executed by the Individual Defendants in their capacity as officers and directors of the SunTx General Partner.  As such, the Individual Defendants and the SunTx General Partner represented to Plaintiffs that the SunTx Limited Partnership had the financial ability to satisfy the Payment Guarantees and intended to honor its obligations, if called upon.

42.     Defendants made various material omissions and failed to disclose to Plaintiffs' (1) the SunTx Limited Partnership's financial ability to honor the Payment Guarantees; (2) the fact that the decision as to whether or not to honor the Payment Guarantees would be made by officers and directors of the SunTx General Partner who knew the SunTx Limited Partnership was providing a worthless guarantee; and (3) that neither had any intention of complying with and honoring the Payment Guarantees.

43.     These facts were concealed from Plaintiffs when Defendants had a duty to disclose them.  Defendants had a duty to disclose because they voluntarily disclosed information—that the SunTx Limited Partnership was the equity sponsor of Ranger and would sign a guaranty agreement for the amounts due from RSNL and RIL—without disclosing the whole truth—that the SunTx Limited Partnership did not have near the assets or capital needed to secure over $30 million in payments.  Defendants also had a duty to disclose in that their representations concerning the Payment Guarantees constituted a partial disclosure that conveyed a false impression.  Similarly, to the extent the SunTx Limited Partnership had some assets which could have been used to pay Plaintiffs, there is no dispute the SunTx Limited Partnership eventually ceased to have such assets. Consequently, Defendants had a duty to disclose when new information arose that made earlier misrepresentations misleading or untrue.

44.    These omissions were material because they prevented Plaintiffs from discovering that the SunTx Limited Partnership and the SunTx General Partner had no intention of complying with the Payment Guarantees and thus induced Plaintiffs to continue with the Shell Project and enter into the charterparties and a Contract for Equipment Rental and Personnel Services for the Conoil Project.

45.    Defendants knew Plaintiffs were ignorant of these omissions and that Plaintiffs did not have an equal opportunity to discover these facts.

46.    Defendants were deliberately silent when they had a duty to speak.

47.    Defendants intended for Plaintiffs to act without the information and Plaintiffs relied upon Defendants' nondisclosure in continuing with the Shell Project and proceeding with the Conoil Project.

48.    Defendants' material omissions directly and proximately caused injury to the Plaintiffs resulting in over $36 million in damages.

49.    Plaintiffs' injury resulted from the Defendants' actual fraud, gross negligence, or malice which entitles Plaintiffs to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code section 41.003(a).

**Count 4 – Negligent Misrepresentation**

50.    Plaintiffs incorporate the above numbered paragraphs 1 through 49 as if fully set forth herein.

51.    Defendants represented to Plaintiffs that the SunTx Limited Partnership had the financial ability to satisfy the Payment Guarantees and intended to honor the Payment Guarantees, if necessary, when, in fact, this was false.

52.     Defendants made these false representations in the course of business with Plaintiffs or in a transaction in which the Defendants had an interest in order to induce Plaintiffs to continue performing under the charterparties and Contract for Equipment Rental and Personnel Services for the Shell Project, as well as enter into agreements for the Conoil Project.  Defendants supplied this false information for the guidance of Plaintiffs in evaluating how to proceed with the Shell Project and whether to enter into agreements for the Conoil Project.

53.     Plaintiffs justifiably relied on these representations.  As a result, Plaintiffs provided vessels, equipment, and personnel services for the Shell and Conoil Projects.

54.     Defendants did not exercise reasonable care or competence in representing to Plaintiffs their ability and intent to honor the Payment Guarantees.

55.     These false representations directly and proximately caused injury to the Plaintiffs resulting in over $36 million in damages.

56.     Plaintiffs' injury resulted from the Defendants' actual fraud, gross negligence, or malice which entitles Plaintiffs to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code section 41.003(a).

**VICARIOUS LIABILITY AGAINST
SUNTX CAPITAL II MANAGEMENT CORP.**

**Count 1 -** *Respondeat Superior*

57.     Plaintiffs incorporate the above numbered paragraphs 1 through 56 as if fully set forth herein.

58.     At all times relevant, the Individual Defendants were acting within the course and scope of their employment with the SunTx General Partner.

59.     At all times relevant, the Individual Defendants were acting within their general authority in furtherance of the SunTx General Partner's business for the accomplishment of the objectives for which they were employed.

60.     Plaintiffs therefore invoke the doctrine of *Respondeat Superior* as against the SunTx General Partner.

## Count 2 – Agency Liability

61.     Plaintiffs incorporate the above numbered paragraphs 1 through 60 as if fully set forth herein.

62.     At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by the Individual Defendants as agents, representatives or employees of the SunTx General Partner occurred within the scope of the actual or apparent authority of such person on behalf of the SunTx General Partner.

63.     Therefore, the SunTx General Partner is liable to Plaintiffs for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## Count 3 – Ratification

64.     Plaintiffs incorporate the above numbered paragraphs 1 through 63 as if fully set forth herein.

65.     Plaintiffs entered into the Payment Guarantees and continued to provide vessels and equipment to the Shell and Conoil Projects based on the representations of the Individual Defendants.

66.     At all times relevant, the Individual Defendants were acting on behalf of the SunTx General Partner and the SunTx General Partner retained the benefits of their acts.

17

67.     The SunTx General Partner approved the acts of the Individual Defendants by word, act, and/or conduct with full knowledge of the acts of the Individual Defendants and its approval was given with the intention of validating the Individual Defendants' false representations.

68.     Therefore, the SunTx General Partner ratified the acts of the Individual Defendants and is liable to Plaintiffs for the damages arising from said acts.

## REQUEST FOR DECLARATORY JUDGMENT

69.     Plaintiffs incorporate the above numbered paragraphs 1 through 68 as if fully set forth herein.

70.     Plaintiffs seek declaratory judgment against Defendant SunTx Capital II Management Corp. under FED. R. CIV. P. 57 and 28 U.S.C. §§2201 and 2202 and Chapter 37 of the Texas Civil Practice and Remedies Code.

71.     Pursuant to the Texas Revised Partnership Act ("TRPA"), codified in the Texas Business Organizations Code, the general partner of a limited partnership is jointly and severally liable for the obligations of the limited partnership.  TEX. BUS. ORGS. CODE §152.304(a).

72.     At all times relevant, the SunTx General Partner was the general partner of the SunTx Limited Partnership.

73.     On March 12, 2020, a Final Judgment was entered in favor of Plaintiffs against the SunTx Limited Partnership in Civil Action No. 4:17-CV-00548 in the United States District Court for the Southern District of Texas.  *See* Exhibit A.

74.     Plaintiffs therefore seek a declaratory judgment from this Court stating that the SunTx General Partner, as general partner of the SunTx Limited Partnership, is jointly and

severally liable for the full amount of the Final Judgment issued against the SunTx Limited Partnership in the above-referenced cause.

### FRAUDULENT CONCEALMENT / DISCOVERY RULE

75.     Plaintiffs allege in response to any pleas of limitations that the running of the statutes of limitations are tolled or suspended under the doctrines of fraudulent concealment and the discovery rule because the facts giving rise to the claims and causes of action asserted herein were inherently undiscoverable and not objectively verifiable, not known to Plaintiffs, and could not reasonably have been known to Plaintiffs at the time of their occurrence.

### ATTORNEY'S FEES

76.     Plaintiffs seek to recover their reasonable and necessary attorney's fees and other expenses of litigation from all Defendants to the extent provided by law, including the applicable federal and state declaratory judgment acts.

### JURY DEMAND

77.     Plaintiffs demand a trial by jury herein.

### PRAYER

WHEREFORE, West African Ventures Limited and Sea Trucks Group FZE pray that, upon trial hereof, judgment is entered as follows:

1.     Declaratory judgment enforcing liability against SunTx Capital II Management Corp. for the Final Judgment obtained by Plaintiffs against SunTx Capital Partners II GP, LP in Civil Action No. 4:17-CV-00548 in the United States District Court for the Southern District of Texas;

2.     Actual damages;

3.     Exemplary damages;

19

4.      Prejudgment and post-judgment interest;

5.      Attorney's fees;

6.      Costs of court; and

7.      All such other and further relief, at law or in equity, to which Plaintiffs may show

themselves justly entitled.

Respectfully submitted,

_/s/ Matthew C. Guy_
Matthew C. Guy
Texas Bar No. 24050702
_matthew.guy@arlaw.com_
Matthew A. Copeland
Texas Bar No. 24082856
_matt.copeland@arlaw.com_
Amanda L. Sanders
Texas Bar No. 24033151
_amanda.sanders@arlaw.com_
Adams and Reese LLP
1221 Mc Kinney Suite 4400
Houston, TX 77010
(713) 652-5151
_Attorneys for Plaintiffs, West African Ventures_
_Limited; Sea Trucks Group FZE_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing pleading has been delivered to the following counsel of record via the Electronic Court Filing service on April 22, 2022.

SunTx Capital Partners II, GP, LP,
Ned M. Fleming, III
Craig Jennings
Through counsel, Andrew Meade / Sam Haren
MEADE & NEESE, LLP
2118 Smith Street
Houston, Texas 77002

/s/ Matthew C. Guy
MATTHEW C. GUY