United States District Court
Southern District of Texas
**ENTERED**
October 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WEST AFRICAN VENTURES LIMITED and SEA TRUCKS GROUP FZE, <br><br> Plaintiffs, <br><br> v. <br><br> NED M. FLEMING, III, CRAIG JENNINGS, and SUNTX CAPITAL II MANAGEMENT CORP., <br><br> Defendants. | § § § § § § § § § § § § § § CIVIL ACTION NO. H-21-4124 |

**MEMORANDUM OPINION AND ORDER**

West African Ventures Limited and Sea Trucks Group FZE contracted to provide vessels, equipment, and personnel services to subsidiaries of Ranger Offshore, Inc., for underwater pipeline projects off the coast of West Africa. After the Ranger subsidiaries failed to pay the invoices issued by West African and Sea Trucks, they sought and received payment guarantees[1] from Ranger and Ranger's equity sponsor, SunTx Capital Partners II GP, LP (SunTx Limited). Ned Fleming and Craig Jennings signed the payment guarantees as officers of SunTx Capital II Management Corp. (SunTx General), SunTx Limited's general partner. West African and Sea Trucks allege that, in reliance on these guarantees, they continued to perform under the existing contracts with the Ranger subsidiaries and entered into contracts for a new project with the Ranger subsidiaries. The subsidiaries did not pay a number of invoices from the first project, owing over $1 million, and did not pay any of the invoices on the second project, owing approximately $34 million. (Docket Entry No. 14 ¶ 16). West African and Sea Trucks made a demand on Ranger and SunTx Limited under the guarantees Fleming and Jennings had signed, but the guarantors did not pay. West

---

[1] The court adopts the spelling, "guarantee," used in the relevant documents.

African and Sea Trucks sued Ranger and SunTx Limited in this district and received a final judgment in their favor, including an award of more than $35 million. Liability and damages are established by the judgment, but West African and Sea Trucks face the task of collecting on it. SunTx Limited has maintained that it does not have assets and cannot satisfy the judgment. That leaves the guarantors.

West African and Sea Trucks sued Fleming, Jennings, and SunTx General for fraud, fraudulent inducement, fraud by nondisclosure, and negligent misrepresentation, alleging that SunTx General, Fleming, and Jennings knew, when they signed the payment guarantees, that SunTx Limited could not pay, would not be able to pay, and intended not to pay. West African and Sea Trucks allege that SunTx General is vicariously liable for Fleming's and Jennings's conduct in signing a guarantee to pay with no ability or intent to perform. The defendants, Fleming, Jennings, and SunTx General, have moved to dismiss, (Docket Entry No. 15), arguing that the plaintiffs have not sufficiently pleaded misrepresentation or reliance.

Based on the amended complaint, the motion and response, the arguments of counsel, and the applicable law, this court denies the motion to dismiss. The reasons are set out below.

**I.      Background**

West African Ventures Limited is a Nigerian company that owns and operates vessels used in the offshore oil and gas industry in West Africa. (Docket Entry No. 14 ¶ 9). Sea Trucks Group FZE is a United Arab Emirates-based business that provides equipment and personnel to the offshore oil and gas industry. (*Id.*). West African Ventures and Sea Trucks Group provided vessels, equipment, and personnel services to nonparty subsidiaries of Ranger Offshore, Inc. (*Id.* ¶ 10). One subsidiary, Ranger Subsea Nigeria Limited, charted the vessels and another, Ranger International Limited, rented equipment and personnel. (*Id.*).

In 2015, West African and Sea Trucks provided equipment for Ranger Subsea and Ranger International for the Shell Project, which involved laying underwater pipeline.  (*Id.*).  These arrangements were governed by a contract for equipment and services and by charter parties.  (*Id.* ¶ 11).  Under these contracts, West African Ventures and Sea Trucks Group sent invoices to Ranger Subsea and Ranger International, which missed several payments.  (*Id.* ¶ 12).  West African Ventures and Sea Trucks Group sought payment guarantees from the parent company, Ranger, and Ranger's equity sponsor, SunTx Limited.  (*Id.*).  West African Ventures and Sea Trucks Group sought these guarantees—rather than terminating or suspending performance under the contracts—to provide an additional source of payment for the vessels, equipment, and personnel West African Ventures and Sea Trucks Group had provided for the Shell Project if Ranger Subsea and Ranger International failed to pay for them.  (*Id.* ¶ 12).

On November 25, 2015, Ranger and SunTx Limited executed two payment guarantees, one for West African Ventures and one for Sea Trucks Group, related to the Shell Project.  (*Id.* ¶ 13). The guarantees executed on behalf of SunTx Limited were signed by Ned N. Fleming, III, as president of SunTx General.  (*Id.*).  Guarantees in hand, West African and Sea Trucks decided to continue with the Shell Project.  (*Id.*).

On February 16, 2016, Ranger and SunTx Limited Partnership executed two more guarantees, one for West African Ventures and one for Sea Trucks Group, related to a second project, the Conoil Project.  (*Id.* ¶ 14).  These guarantees related to contracts similar to those at issue in the Shell Project.  (*Id.*).  The two payment guarantees for the Conoil Project executed on behalf of SunTx Limited were signed by Craig Jennings as Vice President and Chief Financial Officer of SunTx General.  (*Id.* ¶ 15).

3

The guarantees, (Docket Entry Nos. 15-1, 15-2, 15-3, 15-4), contain a representation and warranty that SunTx Limited "owns a substantial legal interest in the Contractor [*i.e.* the Ranger subsidiaries] and is fully authorized to issue this Guarantee on the Contractor's behalf." (Docket Entry No. 15-1 § 3). The guarantees provide that:

> The Guarantor hereby unconditionally and irrevocably guaranties as surety, to Beneficiary, its successors and assigns: the full and prompt payment by Contractor, its successors and assigns, of all amounts due from the Contractor to the Beneficiary under the Contracts and which are outstanding, and all future payments that become due under the Contracts and which are outstanding, and all future payments that become due under the Contracts by Contractor whether or not invoices in respect of such amounts have been issued as of the date of this Guarantee[.] If Contractor fails to pay any Guaranteed Obligation when due . . . . the Guarantor shall pay in full and satisfy such unpaid Guaranteed Obligation . . . .

(*Id.* § 4). Similar language appears in all four guarantees.[2]

West African and Sea Trucks allege that Ranger Subsea and Ranger International made some payments for the Shell Project but failed to pay over $1 million for the vessels, equipment, and personnel services provided by West African and Sea Trucks for the project. (Docket Entry No. 14 ¶ 16). West African and Sea Trucks allege that Ranger Subsea and Ranger International made no payments on the Conoil Project, and owe over $34 million for the vessels, equipment, and personnel services that West African and Sea Trucks provided for that project. (*Id.*).

West African and Sea Trucks sued Ranger and SunTx Limited for payment in the Southern District of Texas. (*Id.* ¶ 17). The District Court granted the plaintiffs' motion for summary judgment as to liability, but not damages, on the plaintiffs' claims relating to the payment guarantees for the Shell Project and the Conoil Project. (*Id.* ¶ 18). Following a trial on damages,

---

[2] The defendants accept that "[t]he 2016 Guarantees were largely identical to the 2015 Guarantees. The only relevant difference is that, unlike the 2015 Guarantees, the 2016 Guarantees did not contain any recitation of an amount already owed by [the Ranger subsidiaries], so there can be question [*sic*] that any obligations thereunder were contingent and unliquidated." (Docket Entry No. 15 at 4–5). Both parties refer to the guarantees collectively in their briefing; the court does not consider any differences between them while resolving the motion to dismiss.

the court held Ranger and SunTx Limited jointly and severally liable for more than $35 million in damages to West African Ventures and Sea Trucks Group because of Ranger's and SunTx Limited's breach of the payment guarantees. (*Id.* ¶ 19).

West African and Sea Trucks allege that SunTx Limited cannot satisfy the judgment and has represented as much. (*Id.* ¶ 20). The plaintiffs allege that even before the court entered final judgment, SunTx Limited stated that it had no assets. (*Id.*). West African and Sea Trucks allege that SunTx Limited has never had any employees, does not generate revenue, and was, at the time it signed the guarantees, "grossly undercapitalized." (*Id.* ¶ 22). The plaintiffs allege that, to the extent that SunTx Limited had any capital, it was earmarked for other expenditures. (*Id.* ¶ 20). West African and Sea Trucks allege that Fleming and Jennings, who signed the guarantees as officers of SunTx General, knew that SunTx Limited could not fulfill its obligations and had no intent to do so, to induce West African Ventures and Sea Trucks to continue to work on the Shell Project and to enter the contract to work on the Conoil Project. (*Id.* ¶¶ 21–22).

West African and Sea Trucks bring claims for fraud, fraudulent inducement, fraud by nondisclosure, and negligent misrepresentation. (*Id.* ¶¶ 24–56). West African and Sea Trucks allege that SunTx General is vicariously liable for the acts of Fleming and Jennings in signing the guarantees with a present intent not to pay or perform, including in the future. (*Id.* ¶¶ 57–68). They seek a declaratory judgment that SunTx General is jointly and severally liable for the full amount of the final judgment issued against SunTx Limited. (*Id.* ¶¶ 69–74).

II.     **The Motion to Dismiss Standard**

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts

5

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must "construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

Rule 9(b) requires complainants asserting fraud, fraudulent inducement, and negligent misrepresentation to plead facts with sufficient particularity to "provide defendants adequate notice of the nature and grounds of the claim." *Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 622, 652 (S.D. Tex. 2009) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). Pleadings must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004) (quoting *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177–78 (5th Cir.1997)). "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.) (quoting *WMX Techs*, 112 F.3d at 179), *modified*, 355 F.3d 356 (5th Cir. 2003).

### III. Analysis

#### A. Common Law Fraud and Fraudulent Inducement

A plaintiff alleging fraud must allege facts that would show that "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting reference omitted).

"Fraud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (applying Texas law). "[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id.* (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Id.* In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. *See id.*

7

West African and Sea Trucks allege both fraud and fraudulent inducement. They seek to recover damages arising from SunTx Limited's breach of the payment guarantees, which are allegedly enforceable contracts. West African and Sea Trucks allege injuries from relying on those payment guarantees in continuing to perform under the contracts for the Shell and Conoil Projects. The payment guarantees contained alleged misrepresentations as to SunTx Limited's ability to perform the guarantees and evidence its intent not to perform in the future if the Ranger subsidiaries defaulted. It is unclear whether a common law fraud theory or a fraudulent inducement theory applies. *Cf. Bohnsack v. Varco, L.P.*, 668 F.3d 262, 276–77 (5th Cir. 2012) (explaining that when the harm "arises out of the contract" between the parties, meaning the plaintiff suffered an injury through entering into the contract, the harm is properly the subject of a fraudulent inducement claim, not a common-law fraud claim). Both theories are analyzed here.

West African and Sea Trucks allege that the defendants, SunTx General, Jennings, and Fleming, falsely "represented to Plaintiffs that [SunTx Limited] had the financial ability to satisfy the Payment Guaranties," and that that SunTx Limited "intended to honor its obligations, if called upon." (Docket Entry No. 14 ¶ 25).

The defendants argue that West African Ventures and Sea Trucks have not adequately pleaded that the defendants made actionable false representations, because West African Ventures and Sea Trucks have not alleged an explicit false representation and because any alleged false representation is too indefinite to be the subject of a fraud claim. (Docket Entry No. 15 at 8–12). The defendants argue that West African Ventures and Sea Trucks plaintiffs have not alleged with particularity that the defendants represented that SunTx Limited had sufficient assets to perform under the guarantees or that any such representations were false. (*Id.* at 12–13). The defendants argue that they could not have made any misrepresentation in the text of the guarantees because

8

the guarantees contain no information about SunTx Limited's financial ability to satisfy the guaranteed obligations. (*Id.* at 13–14). The defendants accuse the plaintiffs of "launch[ing] *in terrorum* [*sic*] litigation," (*id.* at 2), in an attempt to cast an unfortunate business deal as a fraud.

In opposition, West African and Sea Trucks direct the court to the arguments made in their prior opposition brief, (Docket Entry No. 17 ¶ 22 (referencing Docket Entry No. 11 ¶¶10–31)), and return the defendants' invective with the accusation that the defendants are simply "regurgitating their original motion." (*Id.* ¶ 18). In their prior response, the plaintiffs argued that the defendants could not have intended that SunTx Limited would cover over $30 million in guarantees because the defendants knew that SunTx Limited had no employees, no revenues, and no assets. (Docket Entry No. 11 ¶ 15). West African Ventures and Sea Trucks allege that Jennings and Fleming knew about the financial condition of SunTx Limited because of their roles as officers of SunTx General. (*Id.* ¶ 16). Even though the payment guarantees did not expressly state that SunTx Limited had the financial ability to cover the amount of the current or future unpaid invoices, the express purpose of the guarantees was to ensure payment by SunTx Limited if the guaranteed parties did not pay. (*Id.* ¶ 17–19). West African Ventures and Sea Trucks support their argument that the guarantees were fraudulent when made by pointing to definitions of "guaranty" and language from the U.S. Supreme Court. (*Id.* ¶ 19); *see also U.S. Fid. & Guar. Co. v. United States*, 191 U.S. 416, 424–25 (1903) ("In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation.").

The plaintiffs have pleaded that the defendants guaranteed payment from SunTx Limited if the Ranger entities defaulted on the plaintiffs' invoices, knowing that SunTx Limited did not have the financial ability to pay any invoiced amounts at any foreseeable time in the future. The plaintiffs have pleaded that, by virtue of their role as SunTx General officers, Fleming and Jennings

9

knew or should have known this information when they signed the payment guarantees on behalf of SunTx General. West African Ventures and Sea Trucks have made sufficiently particular allegations to state a fraud claim against the defendants.

The defendants' argument that Texas law does not permit a fraud claim based on implied misrepresentations, (Docket Entry No. 15 at 8–9), is unpersuasive. West African Ventures and Sea Trucks allege that the defendants "promise[d] that [the plaintiffs] could look to [SunTx Limited] for payment" should Ranger Subsea and Ranger International default on their obligations to pay West African Ventures and Sea Trucks for the invoiced contract services and products. (Docket Entry No. 14 ¶ 13). The guarantees themselves state that SunTx Limited would "satisfy" the obligations of the Ranger entities should those entities default. (*E.g.*, Docket Entry No. 15-1 § 4). By explicitly stating that SunTx Limited "would" pay, the guarantees implicitly state that SunTx Limited "could" pay. The cases the defendants cite in support of their implied-misrepresentation argument are not helpful. Those cases describe situations in which the alleged misrepresentation was a product of the plaintiff's mistaken inference. In *Crenshaw*, the plaintiff acknowledged that "[t]here was no specific promise," but that he relied on the "implication [he] got . . . that [the defendant]" would take a particular action. *Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir. 1991). In *Bevan*, the court held that a fraud claim could not proceed based on the plaintiff's belief that the presence of a security guard at a subdivision amounted to a promise that a security guard would always be at the subdivision. *Bevan v. Gen. Elec. Credit Equities Corp.*, No. 14-98-00233-CV, 1999 WL 1041185, at *2 (Tex. App.—Houston [14th Dist.] Nov. 18, 1999, pet. denied). West African Ventures and Sea Trucks allege specific misrepresentations made by SunTx General, Jennings, and Fleming about SunTx Limited's ability and intent to pay if and when the Ranger subsidiaries defaulted.

10

The defendants also argue that the plaintiffs' allegations lack definiteness, in part because they fail to allege that the defendants made an explicit representation of their financial condition and because the defendants' obligations were conditioned on the Ranger entities' default. (Docket Entry No. 15 at 10, 13–14; Docket Entry No. 19 at 2). The alleged misrepresentation is that SunTx Limited would be financially able to pay as promised if and when the Ranger entities failed to pay. This is sufficiently specific to state a claim, given the allegation that when SunTx Limited made the promise to pay, it knew that it did not have the ability to pay and would not have it in the future, because it had no assets, no revenues, and was undercapitalized. The plaintiffs do not allege that the defendants committed fraud by promising to try to pay if they were able to do so when the Ranger subsidiaries defaulted. *Litig. & Records Services, LLC v. QTAT BPO Sols., Inc.*, No. 14-20-00558-CV, 2022 WL 1260193, at *7 (Tex. App.—Houston [14th Dist.] Apr. 28, 2022, pet. filed) (a promise that a company would "try to be profitable" was not actionable as fraud) (cited in Docket Entry No. 15 at 9). The plaintiffs do not allege that the defendants made "if-then promises to consider opportunities" that might arise at a later time. *CMS Energy Res. Mgmt. Co. v. Quicksilver Res., Inc.*, No. 2-07-260-CV, 2009 WL 1815776, at *10 (Tex. App.—Fort Worth June 25, 2009, no pet.) (cited in Docket Entry No. 15 at 10). Instead, the plaintiffs allege that the defendants promised to guarantee obligations that, at the time of the promise, they knew they had, and would not have, any ability to perform, at any time.

The defendants argue that West African and Sea Trucks have not alleged specific facts showing that the defendants' representations were false, or that the defendants made any representations about their finances. (Docket Entry No. 15 at 10–12). The defendants argue that the plaintiffs' allegations that SunTx Limited falsely represented that it "had the financial ability to satisfy the Payment Guarantees" cannot support a fraud claim. The defendants argue that if this

11

is enough to allege fraud, any guarantor commits fraud unless it has enough cash or liquid assets on hand to satisfy any guarantee-payment obligation that might arise in the future when the guarantees were signed; and when any obligation to pay arose. (*Id.* at 11). The allegations are not so broad. The allegations are that that SunTx Limited, Fleming, and Jennings knew that Sun Tx Limited could not, when the guarantees were signed or in the future, satisfy the guarantee obligations. At the motion to dismiss stage, those allegations are enough.

The defendants also argue that the plaintiffs made only conclusory allegations as to the defendants' intent to not perform their contractual promises. (*Id.* at 14–16). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "The mere failure to perform a contract is not evidence of fraud." *Id.*

The plaintiffs have made more than a conclusory statement that SunTx Limited did not intend to honor its obligations when it signed the payment guarantees. The plaintiffs allege that SunTx Limited was "grossly undercapitalized at the time Plaintiffs were engaged to provide vessels, equipment, and personnel services to the Shell and Conoil Projects and entered into the Payment Guaranties." (Docket Entry No. 14 ¶ 22). The plaintiffs allege that SunTx Limited lacked adequate assets to cover the guarantees, lacked another way to generate enough assets to cover the guarantee obligations, and that any capital it had was already committed to other expenditures. (*Id.* ¶ 20). The plaintiffs allege that Fleming and Jennings knew the financial condition of SunTx Limited because of their roles at SunTx General and knew when they signed the payment guarantees that SunTx Limited did not have, and would not have, enough assets or capital to be

12

able to meet its guarantee obligations. (*Id.* ¶ 21). Again, at the motion to dismiss stage, the plaintiffs have stated a claim.

### B. Fraud by Nondisclosure

To plead fraud by nondisclosure, the plaintiffs must allege facts that could show that:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

The plaintiffs allege that the defendants made three material omissions:

> (1) the SunTx Limited Partnership's financial ability to honor the Payment Guarantees; (2) the fact that the decision as to whether or not to honor the Payment Guarantees would be made by the SunTx General Partner; and (3) that neither had any intention of complying with and honoring the Payment Guarantees.

(Docket Entry No. 14 ¶ 42). The defendants argue that the plaintiffs have not sufficiently alleged that there were material facts that required disclosure. (Docket Entry No. 15 at 17). The defendants argue that the fact that the limited partnership was controlled by the general partner did not need to be disclosed because the plaintiffs knew that SunTx Limited was a limited partnership and that SunTx General was its general partner. (*Id.* at 18). The court agrees that the plaintiffs have not sufficiently alleged that the failure to disclose the general partner's decision-making authority was material to their reliance on the payment guarantees. But the plaintiffs have sufficiently alleged that the defendants wrongfully omitted from the payment guarantees the information that SunTx Limited did not have, and would not have, the ability to make the payments called for by the guarantees. This is sufficient to meet the Rule 9(b) pleading standard requiring allegations of "the type of facts omitted, the place in which the omissions should have appeared,

13

and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

"For there to be an actionable nondisclosure fraud, there must be a duty to disclose." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481 (5th Cir. 2000). "Whether such a duty to disclose exists in this case is entirely a question of law." *Id* (quotation marks omitted). "A plaintiff must allege facts showing that a defendant had such a duty to disclose under Rule 9(b)." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 490 F. Supp. 2d 784, 794 (S.D. Tex. 2007). Texas law requires that when "a person voluntarily discloses information, he must disclose the whole truth," and "when a person makes a partial disclosure and conveys a false impression," the person must disclose facts necessary to correct that false impression. *Id.* West African and Sea Trucks have sufficiently alleged that by committing SunTx Limited to pay the guarantees while knowing that SunTx Limited had, and would in the future have, no ability to pay, the defendants voluntarily disclosed some information without disclosing the whole truth and conveyed a false impression through a partial disclosure. The defendants allegedly had a duty to disclose, which they breached by omitting material facts.

Finally, West African Ventures and Sea Trucks have adequately alleged that when SunTx Limited, Jennings, and Fleming signed the guarantees, they knew that SunTx could not, and would not be able to, perform. That adequately alleges an intent not to perform in the future to state a claim for fraudulent inducement. The motion to dismiss the claims for fraud and fraudulent inducement is denied.

### C. Negligent Misrepresentation

The elements of a negligent misrepresentation claim are:

(1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise

> reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury.

*Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.). The defendants argue that the plaintiffs have not alleged that the defendants made a misrepresentation. The defendants also argue that "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012). But, as the plaintiffs explain, this means only that the falsity must exist when the statement is made. The plaintiffs have alleged that the defendants made actionable misrepresentations when they signed the guarantees: the defendants knew that they misrepresented SunTx Limited's ability to satisfy the payment obligation, regardless of when it arose. *See Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.).

The defendants finally argue that the damages sought for the negligent misrepresentation claim are duplicative of the damages that the plaintiffs seek to recover under a breach of contract theory and is barred by the economic loss doctrine. (Docket Entry No. 15 at 20–21). It is not clear that the plaintiffs could sue the defendants for breach of contract because only SunTx Limited was a party to the guarantees, although Fleming and Jennings signed the guarantees on behalf of SunTx Limited. Additionally, the damages alleged from the plaintiffs' reliance on the guarantees in continuing to perform under the Shell Project and Conoil Project contracts, is related to but distinct from the breach of contract damages sought from SunTx Limited. The amount may be the same, but the source of the injury is different. "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). The defendants have not shown that the economic loss doctrine applies at this stage.

**IV.     Conclusion**

The motion to dismiss, (Docket Entry No. 15), is denied.  The defendants may reurge their arguments on the basis of a more developed record, at the summary judgment stage or at trial.

SIGNED on October 11, 2022, at Houston, Texas.

                                                                                          _____
                                                                                                    Lee H. Rosenthal
                                                                                       Chief United States District Judge