**In the United States District Court**
**Southern District of Texas**
**Houston Division**

| | |
|---|---|
| **West African Ventures Limited, Sea Trucks Group FZE,** <br> Plaintiffs, <br><br> v. <br><br> **Ned M. Fleming, III; Craig Jennings; SunTx Capital II Management Corp.,** <br> Defendants. | **Civil Action No.** <br><br> **4:21-cv-04124** |

**<u>Defendants' Motion for Partial Summary Judgment</u>**

# Table of Contents

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

Index of Exhibits ................................................................................................................. vi

Nature and Stage of the Proceeding ...................................................................................... 1

Statement of Issues to be Ruled On ....................................................................................... 1

Introduction .......................................................................................................................... 1

Background ........................................................................................................................... 1

Summary of the Argument .................................................................................................... 6

Discussion ............................................................................................................................. 7

I.   Plaintiffs have no evidence that Defendants made a misrepresentation or failed to
     disclose a relevant fact or that Plaintiffs justifiably relied or suffered any damages ............... 7

     A.  Plaintiffs' affirmative misrepresentation claims fail for lack of evidence of a material
          misrepresentation .......................................................................................................... 7

          1.  Plaintiffs' 30(b)(6) representatives conceded that Plaintiffs have no evidence of
               a misrepresentation or reliance ................................................................................. 8

          2.  Plaintiffs have no evidence that SunTx LP lacked a certain quantum of assets at
               the time of the Guarantees ...................................................................................... 10

          3.  Plaintiffs have no evidence that SunTx LP did not intend to perform ....................... 11

     B.  Plaintiffs have no evidence to support a duty to disclose or breach of such duty ............ 11

     C.  Defendants have no evidence of justifiable reliance ....................................................... 12

     D.  Defendants have no evidence of damages ...................................................................... 12

II.  Defendants conclusively negate essential elements of Plaintiffs' causes of action ............... 13

     A.  Defendants did not make a material misrepresentation .................................................. 13

          1.  Defendants did not make any actionable representations about their assets relative
               to their obligations ................................................................................................. 14

               a.  At the time of the Guarantees, SunTx LP had $61 million in net assets that
                    it would have monetized to perform its obligations .............................................. 14

               b.  Representations based on possible future obligations are not actionable ............. 16

          2.  Defendants intended for SunTx LP to honor its obligations ..................................... 19

     B.  Defendants did not tortiously fail to disclose any fact to Plaintiffs ................................. 19

III. Defendants conclusively establish affirmative defenses .................................................... 20

     A.  Plaintiffs' tort claims are barred by limitations ............................................................. 20

     B.  Plaintiffs' tort claims are barred by res judicata .......................................................... 21

Conclusion ......................................................................................................................... 25

## Table of Authorities

*Case*                                                           *Page(s)*

*Anderson v. Durant*,
　550 S.W.3d 605 (Tex. 2018)............................................................................7, 11–12, 19

*Austin v. Kroger Tex., L.P.*,
　864 F.3d 326 (5th Cir. 2017) ...........................................................................................7

*Bank of La. v. Aetna U.S. Healthcare Inc.*,
　468 F.3d 237 (5th Cir. 2006) .........................................................................................20

*Brazos River Auth. v. GE Ionics, Inc.*,
　469 F.3d 416 (5th Cir. 2006) ...........................................................................................8

*Butler v. Endeavor Air, Inc.*,
　805 F. App'x 274 (5th Cir. 2020) ..............................................................................22–23

*Carnival Leisure Indus. v. Aubin*,
　53 F.3d 716 (5th Cir. 1995) .....................................................................................13, 16

*Chavers v. Hall*,
　No. 4:10-cv-03922, 2011 WL 2457943 (S.D. Tex. June 16, 2011)............................22, 24

*Commercial Box & Lumber Co. v. Uniroyal, Inc.*,
　623 F.2d 371 (5th Cir. 1980) .........................................................................................22

*Crim Truck & Tractor Co. v. Navistar Int'l Transp.*,
　823 S.W.2d 591 (Tex. 1992)......................................................................................11, 19

*Doe I v. Roman Catholic Diocese of Galveston-Houston*,
　No. 05-cv-01047, 2006 WL 8446968 (S.D. Tex. 2006) ..................................................10

*Ellis v. Amex Life Ins.*,
　211 F.3d 935 (5th Cir. 2000) .........................................................................................22

*First Am. Bank & Trust of La. v. Tex. Life Ins.*,
　10 F.3d 332 (5th Cir. 1994) ...........................................................................................13

*Haase v. Glazner*,
　62 S.W.3d 795 (Tex. 2001)........................................................................................13–14

*Hamilton v. Segue Software Inc.*,
　232 F.3d 473 (5th Cir. 2000) .........................................................................................11

*Hoffman v. L&M Arts*,
　838 F.3d 568 (5th Cir. 2016) .........................................................................................16

*In re Enron Corp. Securities, Derivative, and "ERISA" Litig.*,
    490 F. Supp. 2d 784 (S.D. Tex. 2007) ...........................................................12

*Lindsey Construction, Inc. v. AutoNation Fin. Servs.*,
    541 S.W.3d 355 (Tex. App.—Houston [14th Dist.] 2017, no pet.).........................7–8, 12

*Lubrizol Corp. v. Exxon Corp.*,
    871 F.2d 1279 (5th Cir. 1989) .................................................................23–24

*McCoy v. Hernandez*,
    203 F.3d 371 (5th Cir. 2000) ..................................................................12–13

*Meza v. General Battery Corp.*,
    908 F.2d 1262 (5th Cir. 1990) .......................................................................22

*Miller v. Raytheon Aircraft Co.*,
    229 S.W.3d 358 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ....................................14

*P.M.I. Servs. N. Am. v. Enduro Pipeline Servs.*,
    No. 16-cv-00442, 2018 WL 8131232 (W.D. Tex. May 18, 2018) ...................................16

*Regency Field Servs. v. Swift Energy Op.*,
    622 S.W.3d 807 (Tex. 2021).........................................................................21

*Resolution Trust Corp. v. S. Union Co.*,
    985 F.2d 196 (5th Cir. 1993) .........................................................................8

*Ruiz v. Mackie Wolfe Zientz & Mann, P.C.*,
    No. 12-cv-00744, 2012 WL 12888783 (W.D. Tex. Sept. 24, 2012) ................................13

*Russell v. Ingersoll-Rand Co.*,
    841 S.W.2d 343 (Tex. 1992).........................................................................21

*Super Future Equities, Inc. v. Wells Fargo Bank MN, N.A.*,
    No. 3:06-cv-00271, 2007 WL 4410370 (N.D. Tex. Dec. 14, 2007)....................................8

*Thompson v. Deutsche Bank Nat'l Trust Co.*,
    775 F.3d 298 (5th Cir. 2014) ........................................................................21

*United States v. Davenport*,
    484 F.3d 321 (5th Cir. 2007) ........................................................................22

*United Teacher Assocs. Ins. v. Union Labor Life Ins.*,
    414 F.3d 558 (5th Cir. 2005) ........................................................................19

*Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*,
    688 F.3d 232 (5th Cir. 2012) ........................................................................10

*Zar v. Omni Indus.*,
 813 F.2d 689 (5th Cir. 1987) ...........................................................................16


**Rule/Statute**                  ***Page(s)***

Fed. R. Civ. P. 30........................................................................................ *passim*

Tex. Civ. Prac. & Rem. Code § 16.004. .....................................................20

Tex. Civ. Prac. & Rem. Code § 16.051 .......................................................20


**Secondary Authority**             ***Page(s)***

Black's Law Dictionary (11th ed. 2019).........................................................4

**Index of Exhibits**

**Exhibit No. 1:**     Jennings Declaration

**Exhibit No. 2:**     WAV Shell Guarantee

**Exhibit No. 3:**     Sea Trucks Shell Guarantee

**Exhibit No. 4:**     WAV Conoil Guarantee

**Exhibit No. 5:**     Sea Trucks Conoil Guarantee

**Exhibit No. 6:**     Initial Disclosures

**Exhibit No. 7:**     Discovery Responses

**Exhibit No. 8:**     Fleming Declaration

**Exhibit No. 9:**     Prior Complaint

**Exhibit No. 10:**    Hearing Transcript

**Exhibit No. 11:**    SCP Audit Report

**Exhibit No. 12:**    SCPDI Audit Report

**Exhibit No. 13:**    Raywood Deposition

**Exhibit No. 14:**    Sea Trucks Deposition

**Exhibit No. 15:**    WAV Deposition

## Nature and Stage of the Proceeding

This is a suit for alleged fraud and negligent misrepresentation in a commercial transaction. Discovery is complete and all that remains is trial.

## Statement of Issues to be Ruled On

Plaintiffs sue for (1) tort claims, (2) vicarious liability, and (3) declaratory judgment. Defendants now move for summary judgment on all of Plaintiffs' tort claims. Summary judgment on liability would moot Plaintiffs' theories of vicarious liability. Defendants do not seek summary judgment on Plaintiffs' declaratory judgment claim, but Defendants do expect that claim can and will be resolved without a trial because it is based on wholly uncontested facts.

## Introduction

Non-party SunTx Capital Partners II GP, LP ("SunTx LP") guaranteed certain obligations its affiliated companies might owe to Plaintiffs. At the time, SunTx LP had more than sufficient net assets to cover any plausible obligations under the guarantees. The obligors ran out of money and defaulted on their obligations, so Plaintiffs sued SunTx LP on the Guarantees. However, by that time, SunTx LP had also run out of money and was unable to pay on its Guarantees. Plaintiffs now sue SunTx LP's principals for fraud based on the allegation that SunTX LP's principal's never intended to pay the guarantees. However, as demonstrated below, all parties involved had the intent and ability to perform all existing and anticipated contractual obligations at the time of the guarantees. Plaintiffs' theory of the case is premised on a fact that is not true.

## Background

Defendants Ned Fleming and Craig Jennings are officers with various private-equity entities named to include the word SunTx. Exhibit 1, Jennings Declaration. Defendant SunTx Capital Partners II Management Corp. ("SunTx GP") is the general partner of SunTx LP. *Id.* SunTx LP, in turn, manages a private equity fund known as "Fund II." *Id.* At all relevant times, Fund II

1

owned interests in numerous assets, including (indirectly) Ranger Offshore, Inc. ("Ranger Offshore"); Ranger International, Ltd. ("RIL"), and Ranger Subsea Nigeria, Ltd. ("RSNL"). *Id.* RIL and RSNL (together, the "Ranger Contractors") were contractors for offshore oilfield work in Nigeria. *Id.* The Ranger Contractors would bid on oil and gas projects, hire local subcontractors for certain jobs, and use the proceeds from its customers to pay those subcontractors. *Id.* Plaintiffs West African Ventures Limited ("WAV") and Sea Trucks Group FZE ("Sea Trucks") were two of those subcontractors. First Amended Complaint (Doc. 14) ("Complaint") at ¶ 9.

In 2015, Shell hired the Ranger Contractors to perform work on an offshore pipeline project in Nigeria (the "Shell Project"). *Id.* at ¶ 10–11. The Ranger Contractors rented vessels and equipment from Plaintiffs for the Shell Project in 2015. *Id.* at ¶ 11. The Ranger Contractors fell behind on their payments, and Plaintiffs requested guarantees from Ranger Offshore. *Id.* Someone—it is presently unclear who[1]—suggested that Plaintiffs also obtain guarantees from SunTx LP. Ranger Offshore negotiated the form of the guarantees with Plaintiffs, but SunTx LP had no direct contact with Plaintiffs in the process of that negotiation. Exhibit 1, Jennings Declaration. SunTx LP eventually signed separate guarantees for each Plaintiff (together, the "Shell Guarantees") on November 25, 2015. Exhibit 2, WAV Shell Guarantee; Exhibit 3, Sea Trucks Shell Guarantee. The Shell Guarantees recited that the Ranger Contractors already owed $750,000.00 at the time and would owe an additional $4,296,459.77 by March 31, 2016. *Id.* at § 8. But SunTx LP was not immediately liable for these amounts. Instead, Plaintiffs could not demand any payment from SunTx LP until 180 days after the due dates set forth in the Shell Guarantees. *Id.* This 180-day delay gave the Ranger Contractors time to pay their own obligations before

---

[1] This could not have been anyone at SunTx LP as Plaintiffs had no contact with SunTx LP or Defendants. Exhibit 14, Sea Trucks Deposition at 11:2–7; Exhibit 15, WAV Deposition at 19:23–22:21.

Plaintiffs could turn to SunTx LP to cover the difference. The Shell Guarantees did not contain any representations by SunTx LP as to its overall net assets or ability to pay the full amount due, which was unliquidated and unknown depending on payments made by the Ranger Contractors.

Separately, Conoil hired the Ranger Contractors for a different undersea pipeline project. Complaint at ¶ 10. The Ranger Contractors rented vessels and equipment from Plaintiffs beginning in January and February 2016. *Id.* at ¶ 14. Plaintiffs requested guarantees from Ranger Offshore and SunTx LP for the Conoil Project. *Id.* at ¶ 15. As before, only Ranger Offshore had any direct contact with Plaintiffs; SunTx LP did not negotiate directly with Plaintiffs at all. Exhibit 1, Jennings Declaration. SunTx LP signed separate guarantees for each Plaintiff (together, the "Conoil Guarantees" and, collectively with the Shell Guarantees, the "Guarantees") on February 16, 2016. Exhibit 4, WAV Conoil Guarantee; Exhibit 5, Sea Trucks Conoil Guarantee. The Conoil Guarantees were largely identical to the Shell Guarantees, but the Conoil Guarantees did not recite any amounts currently due or due in the future.

Sea Trucks' general counsel, Caleb Raywood, negotiated the Guarantees on behalf of both Plaintiffs. Exhibit 14, Sea Trucks Deposition at 9:24–10:5; Exhibit 15, WAV Deposition at 22:1–6. In the course of the negotiations, Chris Guinta and Jim Lam purportedly assured Raywood that the overall SunTx family of companies had substantial assets. Exhibit 13, Raywood Deposition at 17:20–21:12. Raywood correctly understood Lam to have a position with Ranger Offshore, but Raywood mistakenly believed Guinta to be the CFO of all SunTx entities. *Id.* at 18:23–9, 121:15–23. In reality, Plaintiffs' own disclosures show that Guinta was actually an officer with Ranger Offshore. Exhibit 6, Initial Disclosures at 1–2. This is correct: Guinta was Ranger Offshore's chief financial officer, and he has never held any position with SunTx LP, SunTx GP, or any other

SunTx entity. Exhibit 1, Jennings Declaration. Thus, Raywood mistakenly believed that Plaintiffs had made some sort of representation about the assets held by one or more SunTx entities.

Raywood was further mistaken to the extent he believed SunTx LP was a private equity fund. Instead, SunTx LP exists to serve as the general partner of Fund II. Exhibit 1, Jennings Declaration. Except for a small bank account used for overhead expenses, SunTx LP's sole asset is a carried interest in Fund II.[2] *Id.* SunTx LP's carried interest in Fund II was a right to 20% of the distributions from Fund II to the fund's investors. Exhibit 1, Jennings Declaration. Thus, the value of this carried interest is necessarily tied to the value of Fund II itself. *Id.* Prior to liquidation of the relevant assets, SunTx LP's carried interest was reflected in its Fund II capital accounts. *Id.*

Fund II comprised investments in SunTx Capital Partners II, L.P. ("SCP") and SunTx Capital Partners II Dutch Investors, L.P. ("SCPDI"). *Id.* Because SCP and SCPDI had outside investors, outside accountants audited those entities every year. *Id.* Thus, the Court can know the precise value of Fund II—and SunTx LP's carried interest—as of December 31, 2015. *Id.* This date is just 36 days after execution of the Shell Guarantees and 47 days before the execution of the Conoil Guarantees. With minor variations, SunTx LP's value on the dates of the Guarantees was almost identical to the value as of the December 31, 2015 audit date. *Id.*

At the time of the Guarantees, SCP had total assets worth $322,465,706, of which $105,084,592 was attributable to various Ranger entities. Exhibit 11, SCP Audit Report at 3. SCP's investments appreciated in value, and by December 31, 2015, SunTx LP's SCP capital account was net positive $46,836,981. *Id.* at 5. At the same time, SCPDI had total assets worth

---

[2] A carried interest is "[t]he share of any profits produced by a partnership's investment, paid to the general partner as compensation for managing the investment. The general partner often contributes little or no capital to acquire the investment but gains an interest in it by providing time and skill. The general partner's interest in the property is 'carried' with the property until it is liquidated." Black's Law Dictionary (11th ed. 2019).

$163,395,056, of which $53,316,322 was attributable to various Ranger entities. Exhibit 12, SCPDI Audit Report at 3. Thanks to appreciation in value of SCPDI's investments, SunTx LP's SCPDI capital account was net positive $14,149,438 on December 31, 2015. *Id.* at 5. Together, these capital accounts show that, at the time of the Guarantees, SunTx LP had a carried interest worth at least $61,986,419. Exhibit 1, Jennings Declaration.

As of the execution of the Guarantees, SunTx LP was ready, willing, and able to monetize this carried interest by borrowing against or selling a portion of the interest to a third party. *Id.* The simplest mechanism for monetization would be distributions from Fund II itself. *Id.* Further, through its extensive dealings in the private equity industry, SunTx LP was aware of lenders and potential purchasers who would have been willing to loan money secured by or to outright acquire portions of SunTx LP's carried interest. *Id.* SunTx LP could likely not have used this carried interest to raise a full $61 million on short notice. *Id.* But SunTx LP could have converted its carried interest (whether through sale or borrowing-against) into at least $40 million. *Id.*

As time went on, however, the parties' financial prospects soured. The Ranger Contractors incurred obligations to Plaintiffs in the course of the Shell and Conoil Projects. *Id.* The Ranger Contractors intended to pay those obligations with amounts received from Shell and Conoil. *Id.* But Shell and Conoil ultimately refused to pay the Ranger Contractors. *Id.* This left the Ranger Contractors unable to pay all amounts purportedly due to Plaintiffs. *Id.* At the time SunTx LP signed the Guarantees, it had at least $61 million in net assets represented by the carried interest in Fund II. *Id.* But that value slowly declined over time as its investments—including but not limited to Ranger Offshore—lost money and as the businesses faltered. *Id.* SunTx LP was thus unable to pay its obligations under the Guarantees when Plaintiffs called the Guarantees. *Id.*

5

Plaintiffs filed suit (the "2017 Lawsuit") against SunTx LP and Ranger Offshore under the Guarantees in February 2017. Exhibit 9, Prior Complaint at ¶ 17. The Court eventually entered judgment against SunTx LP for $39,180,693.06 on March 12, 2020. *Id.* at ¶ 19. By that time, however, SunTx LP's carried interests and other assets had declined in value from over $61,000,000 on December 31, 2015 to approximately $17,000 on December 31, 2020. Exhibit 1, Jennings Declaration. SunTx LP thus could not satisfy the judgment. *Id.* Plaintiffs now sue under the mistaken theory that, because SunTx LP had no monetizable assets and could not pay Plaintiffs demands in March 2020, SunTx LP must not have ever had such assets and never intended to pay Plaintiffs.

### Summary of the Argument

Plaintiffs allege two misrepresentations: (1) SunTx LP had sufficient assets to pay its future, contingent, unliquidated obligations under the Guarantees and (2) SunTx LP intended to perform its obligations if called upon. Both theories fail for various reasons.

First, Plaintiffs have no evidence that either of these representations was false. Audited financial documents show that, at the time of the Guarantees, SunTx LP had net assets worth approximately $61 million. This is far above SunTX LP's ultimate liability and/or any amount Plaintiffs or Defendants anticipated at the time of the Guarantees. If necessary, SunTx LP would have monetized these assets and paid its obligations. The mere fact that SunTx LP was later unable make the payment is no evidence that Defendants never intended for SunTx LP to do so; that merely shows that SunTx LP's assets lost value following execution of the Guarantees. Plaintiffs further have no evidence of justifiable reliance or damages.

Second, Defendants conclusively negate the misrepresentation elements of Plaintiffs' claims. The uncontroverted evidence shows that, at the time of the Guarantees, SunTx LP was ready, willing, and able to meet any obligations. The uncontroverted evidence further shows that

(1) any representations about SunTx LP's ability to pay were true, (2) any such representations came from third parties and not from Defendants, (3) such representations would have been opinions about the future and not representations of present fact.

Third, Defendants can establish the affirmative defenses of limitations and res judicata. Plaintiffs already sued SunTx LP for the exact same injury in February 2017. Plaintiffs thus necessarily discovered that injury—and that such injury was allegedly caused by a wrongful act of SunTx LP—more than four years before Plaintiffs sued Defendants in December 2021. Plaintiffs' claims are therefore barred by limitations. Similarly, Plaintiffs' current lawsuit is based on the same transaction as its 2017 Lawsuit against SunTx LP. SunTx LP is in privity with all Defendants, therefore Plaintiffs' tort claims are all barred by res judicata.

## Discussion

### I.   Plaintiffs have no evidence that Defendants made a misrepresentation or failed to disclose a relevant fact or that Plaintiffs justifiably relied or suffered any damages.

"[W]hen the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). The Court should grant such summary judgment on Plaintiffs' tort claims (*i.e.*, fraud, fraudulent inducement, fraud by nondisclosure, and negligent misrepresentation).

#### A.   Plaintiffs' affirmative misrepresentation claims fail for lack of evidence of a material misrepresentation.

Plaintiffs' claims for fraud, fraud in the inducement, fraud by nondisclosure, and negligent misrepresentation require proof that (1) Defendants made a misrepresentation directly or by omission and (2) Plaintiffs relied on such misrepresentation or omission. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (fraud and fraudulent inducement); *Lindsey Construction, Inc. v.*

*AutoNation Fin. Servs.*, 541 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (negligent misrepresentation). Plaintiffs allege two theories of misrepresentation: (1) SunTx LP "had the assets, funds, and/or finances available to cover its payment obligations, should it be necessary to call upon the [Guarantees]" and (2) SunTx LP "would fulfill its payment obligations, if called upon . . . ." Exhibit 7, Discovery Responses at 11. Plaintiffs have no evidence of either.

### 1.    Plaintiffs' 30(b)(6) representatives conceded that Plaintiffs have no evidence of a misrepresentation or reliance.

Rule 30(b)(6) "places the burden of identifying responsive witnesses for a corporation on the corporation" who will then "appear[] vicariously" as the "agent" of the corporation. *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (discussing Fed. R. Civ. P. 30(b)(6)). The entity "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (cleaned up). The entity "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* "If the designated agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Id.* at 433–34. Thus, "[f]ederal courts have interpreted this rule as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject." *Super Future Equities, Inc. v. Wells Fargo Bank MN, N.A.*, No. 3:06-cv-00271, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007).

Defendants have deposed 30(b)(6) representatives of both Plaintiffs. Those representatives testified that neither SunTx LP nor Defendants made any misrepresentations to Plaintiffs:

Q.      Did any Defendant make a representation to Sea Trucks about SunTx LP's assets?

A.      I have no knowledge of that.

                    *          *          *

Q.      Did any Defendant make a representation to Sea Trucks about SunTx LP's ability to pay?

A.      Again, I wasn't there. I have no knowledge—direct knowledge of that.

                    *          *          *

Q.      At the time of the Guarantees or in the Guarantees, did Defendants say any—make any false representations to Sea Trucks?

A.      I have no idea. I wasn't a party to those—any—any discussions or any representations that were made.

                    *          *          *

Q.      Earlier you said you're not aware of any—any false statements that the Defendant[s] said about SunTx LP's ability to—to pay?

A.      That's correct.

Q.      Are you aware of any false statements that the defendants made associated with the Guarantees?

A.      I don't—I don't think I'm directly aware of any false statements they made, no.

Exhibit 14, Sea Trucks Deposition at 25:23–25, 26:5–8, 28:1–7, 31:18–25.

Q.      Is WAV aware of any misrepresentations made by Ned Fleming in relation to the payment guarantees?

A.      No, I'm not.

Q.      Is WAV aware of any misrepresentations made by Craig Jennings in relation to the payment guarantees?

A.      No, I'm not.

Q.      Is WAV aware of any misrepresentations made by SunTx [GP] in relation to the guaran—payment guarantees?

A.      No, I'm not.

9

> Q.     Is WAV aware of any misrepresentations made by SunTx [LP] in relation to the payment guarantees?
>
> A.     No, I'm not.

Exhibit 15, WAV Deposition at 23:19–24:7.

Given this testimony by Plaintiffs' 30(b)(6) representatives, Plaintiffs cannot now create fact questions by submitting theories of the case that Defendants were unable to test via deposition. This testimony precludes Plaintiffs from meeting their burden of proof on this element.[3]

### 2.     Plaintiffs have no evidence that SunTx LP lacked a certain quantum of assets at the time of the Guarantees.

Plaintiffs' claims fail even if they are allowed to contradict their 30(b)(6) representatives. Plaintiffs' interrogatory responses claim Defendants misrepresented that SunTx LP "had the assets, funds, and/or finances available to cover its payment obligations, should it be necessary to call upon the [Guarantees]." Exhibit 7, Discovery Responses at 11. But Plaintiffs have refused to state what amount of monetary obligations SunTx LP should have expected at the time it signed the Guarantees. *Id.* at 13–14. Plaintiffs instead say that, because SunTx LP's eventual obligations were reduced to a judgment of $39,180,693.06 in the 2017 Lawsuit, SunTx LP and Defendants should have necessarily anticipated—and therefore had represented their ability to pay—that exact dollar amount at the outset of the Guarantees (even though, as shown below, the person who negotiated the Guarantees for Plaintiffs did not anticipate such obligations). *See* Exhibit 7, Discovery Responses at 13–14. Plaintiffs have no evidence that Defendants made such a representation or that such representation was false.

---

[3] As explained in Defendants' Motion to Dismiss (Doc. 15), Plaintiffs cannot satisfy this burden by alleging implied representations because (1) the Court cannot read the Guarantees in a manner unfavorable to the guarantor and (2) Texas law does not allow fraud claims based on implied representations. *See Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 245 (5th Cir. 2012) (construction must favor guarantor); *Doe I v. Roman Catholic Diocese of Galveston-Houston*, No. 05-cv-01047, 2006 WL 8446968 (S.D. Tex. 2006) (Rosenthal, J.) (Texas law does not recognize fraud by implication).

### 3.   Plaintiffs have no evidence that SunTx LP did not intend to perform.

Plaintiffs further allege that Defendants falsely represented that SunTx LP would perform its obligations under the Guarantees. "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort." *Crim Truck & Tractor Co. v. Navistar Int'l Transp.*, 823 S.W.2d 591, 597 (Tex. 1992). Thus, a fraud allegation based on failure to perform a contractual obligation is only "actionable when the misrepresentation is a false promise of future performance made with a ***present intent*** not to perform." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (emphasis added). In assessing this lack of "present intent," the Court must note that "a party's failure to perform a contract, standing alone, is no evidence of that party's intent not to perform at the time the contract was made." *Crim Truck & Tractor Co.*, 823 S.W.2d at 597.

The record shows that (1) Defendants intended for SunTx LP to honor the Guarantees at the time they were signed and (2) SunTx LP only failed to honor the Guarantees because, by the time payment became due, SunTx LP no longer had the assets to satisfy the Guarantees. Exhibit 1, Jennings Declaration; Exhibit 8, Fleming Declaration. Plaintiffs have no evidence to support this theory of misrepresentation. In fact, Sea Trucks' 30(b)(6) representative testified that the only basis for Plaintiffs' beliefs about Defendants' intent to perform is the fact that SunTx LP did not ultimately pay the amounts due under the Guarantees. Exhibit 14, Sea Trucks' Deposition at 39:14–19. But, as a matter of law, mere "failure to perform a contract . . . is no evidence" of fraud. *Crim Truck & Tractor Co.*, 823 S.W.2d at 597.

### B.   Plaintiffs have no evidence to support a duty to disclose or breach of such duty.

Plaintiffs further argue that Defendants committed fraud by non-disclosure. Complaint at ¶¶ 41–49. Plaintiffs have no evidence of any fact that Defendants purportedly failed to disclose.

Further, "[f]or there to be an actionable nondisclosure fraud, there must be a duty to disclose." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481 (5th Cir. 2000). Texas law imposes

11

a duty to disclose under four circumstances: (1) "where there is a fiduciary or confidential relationship between the parties"; (2)"where a person voluntarily discloses information, he must disclose the whole truth"; (3) "when a person makes a representation and new information makes that earlier misrepresentation misleading or untrue"; and (4) "when a person makes a partial disclosure and conveys a false impression." *In re Enron Corp. Securities, Derivative, and "ERISA" Litig.*, 490 F. Supp. 2d 784, 794 (S.D. Tex. 2007). Plaintiffs have no evidence of any of these circumstances, so there was not duty to disclose. In fact, Sea Trucks' 30(b)(6) representative conceded that none of these circumstances were present. Exhibit 14, Sea Trucks' Deposition at 32:1–15.

### C. Defendants have no evidence of justifiable reliance.

Justifiable reliance is an element of all of Plaintiffs' tort claims. *See Anderson*, 550 S.W.3d at 614; *Lindsey Construction, Inc.*, 541 S.W.3d at 366. But Plaintiffs have no evidence that they suffered any injury due to their reliance on representations Plaintiffs made or should have made. Plaintiffs can potentially show they offered goods and services to the Ranger Contractors after the date on which Plaintiffs could have terminated their contracts. But Plaintiffs cannot show they failed to do so based on anything Plaintiffs said or did not say.

### D. Defendants have no evidence of damages.

Plaintiffs base their entire damages model on the assumption that the judgment against SunTx LP in the 2017 Lawsuit is preclusive against and binding on Defendants. Exhibit 6, Initial Disclosures at 4; Exhibit 7, Discovery Responses at 12–13, 18–19. While certain line-items in the judgment may mirror compensable damages, the judgment itself is not evidence of damages.[4]

---

[4] Defendants concede that, because Defendants are in privity with SunTx LP, Defendants should be collaterally-estopped from relitigating the issue of SunTx LP's breach of the Guarantees or what damages should have been awarded in the 2017 Lawsuit. *See McCoy v. Hernandez*, 203 F.3d 371, 374–75 (5th Cir.

Plaintiffs have not disclosed any other damages model or produced any other evidence of damages, so Plaintiffs cannot prove any damages in this suit. This is especially true for Plaintiffs' negligent misrepresentation theory as any benefit-of-the-bargain damages would be barred by the economic-loss rule. *See Ruiz v. Mackie Wolfe Zientz & Mann, P.C.*, No. 12-cv-00744, 2012 WL 12888783, at 9 (W.D. Tex. Sept. 24, 2012). *See also* Doc. 28 at 15 (denying motion to dismiss negligent misrepresentation claim under the economic-loss rule because "the damages alleged from the plaintiffs' reliance on the guarantees in continuing to perform under the Shell Project and Conoil Project contracts, is related to but distinct from the breach of contract damages sought from SunTx Limited. The amount may be the same, but the source of the injury is different.").

## II.    Defendants conclusively negate essential elements of Plaintiffs' causes of action.

"Summary judgment should be granted where the moving party presents evidence which negates any essential element of the opposing party's claim or where any essential element is without factual support." *First Am. Bank & Trust of La. v. Tex. Life Ins.*, 10 F.3d 332, 334 (5th Cir. 1994). Defendants meet this burden, and the Court should grant summary judgment.

### A.    Defendants did not make a material misrepresentation.

Although they have slightly differing elements, Plaintiffs' claims for fraud, fraudulent inducement, and negligent misrepresentation all require proof of a false representation of present fact. *See Carnival Leisure Indus. v. Aubin*, 53 F.3d 716, 718 (5th Cir. 1995) ("Under Texas law, the elements of fraud are . . . a material misrepresentation of a present existing fact . . . ."); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (The elements of fraudulent inducement are identical, but those "elements of fraud must be established as they relate to an agreement between the

---

2000). However, as explained below, this privity means all claims against SunTx LP's privies—*i.e.*, Defendants—are barred by res judicata. Should the Court disagree with Defendants' privity argument with respect to res judicata, Defendants do not concede privity for purposes of collateral estoppel.

parties."); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379–80 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("To establish a negligent misrepresentation claim, the plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct.").

### 1. Defendants did not make any actionable representations about their assets relative to their obligations.

Plaintiffs' first misrepresentation theory is that Defendants misrepresented that SunTx LP "had the assets, funds, and/or finances available to cover its payment obligations, should it be necessary to call upon the [Guarantees]." Exhibit 7, Discovery Responses at 11. This is only possible if SunTx LP made a representation that it had some quantum of net assets in excess of the amount some unspecified person would have expected to be due under the Guarantees. Plaintiffs have conceded in discovery that this alleged representation is in the Guarantees themselves and not in some extrinsic communication. *Id.* As explained below, this theory fails because:

- at the time of the Guarantees, SunTx LP *did* have more than sufficient net assets to cover any potential obligations.

- Defendants concede that any representations about SunTx LP's assets and ability to pay came from persons other than Defendants; and

- any representation about assets relative to future obligations would be an unactionable statement of opinion and not a statement of definite fact.

SunTx LP notes that this section only addresses the theory that Defendants misrepresented that SunTx LP's assets exceeded its anticipated obligations. Defendants will address the theory that they did not intend for SunTx LP to honor its obligations separately.

### a. At the time of the Guarantees, SunTx LP had $61 million in net assets that it would have monetized to perform its obligations.

As explained below, Defendants did not make a representation about SunTx LP's assets relative to its obligations, nor would such a representation have been actionable. Nevertheless, at the time of the Guarantees SunTx LP *did* have sufficient net assets to cover its foreseeable potential

liabilities and even its unforeseeable actual liabilities under the 2017 Lawsuit's judgment. This means the representation, if any, was not a misrepresentation at all.

The person who negotiated the Guarantees for Plaintiffs (Sea Trucks' former general counsel, Caleb Raywood) testified that he anticipated SunTx LP's maximum exposure would be no more than the "signal digit millions." Exhibit 13, Raywood Deposition at 30:14–22. But Plaintiffs have refused to identify SunTx LP's anticipated obligations at the time of the Guarantees. Exhibit 7, Discovery Responses at 13–14. Instead, Plaintiffs merely point to the eventual $39,180,693.06 judgment they received and claim that Defendants should have anticipated paying that amount—including prejudgment interest and attorneys' fees—at the time they signed the Guarantees. *Id.* But even if that were the correct anticipated obligation, at the time Defendants signed the Guarantees, SunTx LP had enough money to pay it.

The uncontradicted evidence shows that, as of December 31, 2015, SunTx LP had assets worth approximately $61 million. Exhibit 1, Jennings Declaration. SunTx LP could have used these assets to raise at least $40 million—and certainly more than Raywood's "single digit millions"—by selling or borrowing against its carried interest. *Id.* SunTx LP would have done so had it known it was necessary (*i.e.*, that the Ranger Contractors would not be paid by Shell and Conoil and thus would not be able to pay Plaintiffs themselves) while those assets still existed. *Id.* The only reason SunTx LP did not honor its obligations was because, by the time SunTx LP knew what it would be required to pay, SunTx LP no longer had the assets to pay it. *Id.* This means that, when Defendants signed the Guarantees in November 2015 and February 2016, any representation about SunTx LP's ability to pay were true—regardless of whether the Court construes SunTx's implied representation to refer to Raywood's seven-figure *pre hoc* estimate or Plaintiffs'

15

$39 million *post hoc* conclusion. Plaintiffs thus base this entire theory of misrepresentation on a statement that, if it was made, was true.

### b. Representations based on possible future obligations are not actionable.

As noted above, misrepresentation claims must be based on false representations of existing fact. *See Carnival Leisure Indus.*, 53 F.3d at 718. "A representation of fact can constitute actionable fraudulent inducement only if it (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Hoffman v. L&M Arts*, 838 F.3d 568, 579 (5th Cir. 2016) (cleaned up). "Because a prediction, or statement about the future, is essentially an expression of opinion, future predictions are generally not actionable." *Id.* (cleaned up). Thus, "a suggestion, expectation, or prediction about the future does not constitute a material misrepresentation."[5] *P.M.I. Servs. N. Am. v. Enduro Pipeline Servs.*, No. 16-cv-00442, 2018 WL 8131232, at *6 (W.D. Tex. May 18, 2018).

This rule means that, "future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law." *Zar v. Omni Indus.*, 813 F.2d 689, 693 (5th Cir. 1987). Estimates of future profits are necessarily estimates of future income minus estimates of future expenses. This is precisely what Plaintiffs allege Defendants misrepresented by implicitly promising that, by the time any guaranteed obligations were due, SunTx LP's assets would exceed the Ranger Contractor's unpaid expenses.

---

[5] The only exceptions to this rule are if (1) the "prediction of future events [is] so intertwined with ***direct representations of present facts*** as to be actionable and (2) "where the speaker purports to have special knowledge of facts that will occur or exist in the future." *Hoffman*, 838 F.3d at 579 (emphasis added). Neither exception is implicated here as (1) any representation about a future ability to pay cannot be a representation of present fact and (2) there is no allegation that Defendants professed special knowledge of the obligations the Ranger Contractors would incur but fail to pay.

This is true even without the *per se* rule about future profits. At the time they signed the Guarantees, Defendants had an accurate understanding of SunTx LP's then-current assets. Exhibit 1, Jennings Declaration. Defendants could estimate what those assets would be on a particular date in the future, but that estimate would become less certain as the date in question moved further into the future. *Id.* For example, if Jennings knew on December 31, 2015 that SunTx LP's carried interest was worth $61 million, he could confidently estimate what the value of that interest would be on January 1, 2016. *Id.* But an estimate of what that value would be on January 1, 2020 would be little more than speculation. *Id.*

Defendants had no basis to guess as to any other relevant fact involved. For instance, Defendants knew that Plaintiffs had the right to demand payment long after the 180-day grace period ended. Defendants thus did not know the relevant date for which they would need to estimate SunTx LP's ability to pay—Plaintiffs could have called on the Guarantees on day 181 when first allowed by the Guarantees or on day 1,640 when limitations expired against the Ranger Contractors. Defendants had no way to know which date in that range was the relevant date for which they would need to estimate SunTx LP's assets.

Similarly, Defendants knew the Ranger Contractors' present and future obligations to Plaintiffs as of the execution of the Shell Guarantees. *Id.* But Defendants had no way to know (1) how much of that would remain unpaid by the Ranger Contractors and thus become a SunTx LP liability or (2) how much additional obligations the Ranger Contractors would incur in the Shell and Conoil Projects. *Id.* Thus, Plaintiffs' 30(b)(6) representatives conceded:

- "There would be no way of knowing" at the time of execution what SunTx LP might ultimately owe under the Guarantees, Exhibit 14, Sea Trucks Deposition at 14:16–19;

- Plaintiffs could only call on the Guarantees to the extent the Ranger Contractors did not pay an amount due, "and it's difficult to begin to imagine what would be paid and what would not be paid." Exhibit 15, WAV Deposition at 27:4–19.

- "[I]t would have been impossible to calculate what the—what that amount of potential liability under the Guarantees would have been at the time that [WAV] entered them . . . ." *Id.* at 28:2–21.

These representatives' testimony matched that of Plaintiffs' negotiator, Raywood:

- at the time of execution of the Guarantees, the eventual amount due was unknown and unliquidated, Exhibit 13, Raywood Deposition at 89:21–90:2;

- at the time of execution of the Guarantees, the unknown liability was contingent and the date on which the Guarantees would be called, if any, was unknown, *id.* at 34:22–35:18, 78:3–24; and

- Sea Trucks and WAV anticipated their total exposure under the charterparty agreements, which the Guarantees supported, would be less than $10 million, *id.* at 30:11–22.

To avoid any doubt on this subject, Defendants served interrogatories asking Plaintiffs to state "the obligations . . . you contend SunTx LP should have expected at the time it signed the [Guarantees]." Exhibit 7, Discovery Responses at 13–14. Plaintiffs refused to state an exact amount. *See id.* At a hearing to compel more complete responses, Plaintiffs' counsel conceded that SunTx LP's obligations were simply unknowable *ex ante*:

> Because the answer is we did not know at the exact time of this for two reasons: First, we don't know exactly how long the project is going to go on for, you know. We could—we could take a rough guess at that—and they've had discovery on this. They've asked the witnesses who explained this. So they do know.
>
> \*       \*       \*
>
> The second answer is because the—this is a guarantee, right? So what amount would be owed is entirely and, in some respects, exclusively dependent upon what the underlying obligor actually pays, and they know this, Your Honor.

Exhibit 10, Hearing Transcript at 9:6–18.

In sum, Plaintiffs complain that Defendants implicitly represented that SunTx LP's estimated net assets on an uncertain date in the future would exceed the future obligations the Ranger Contractors incurred and did not pay prior to that unspecified date. Defendants *believed*

that SunTx LP would be able to meet its obligations if called upon. But that belief was based on a series of predictions and assumptions about the future—not on any presently-known facts.

### 2.     Defendants intended for SunTx LP to honor its obligations.

Plaintiffs further allege that, by signing the Guarantees, Defendants falsely represented that SunTx LP "would fulfill its payment obligations, if called upon . . . ." Exhibit 7, Discovery Responses at 11. As explained above, however, a fraud allegation based on failure to perform a contractual obligation is only "actionable when the misrepresentation is a false promise of future performance made with a ***present intent*** not to perform." *Anderson*, 550 S.W.3d at 614 (emphasis added). If the party intended to perform when it signed the contract, subsequent non-performance is nothing more than a breach of contract. *See Crim Truck & Tractor Co.*, 823 S.W.2d at 597.

The Court's Memorandum Opinion on Defendants' motion to dismiss stressed that Plaintiffs based this theory on the allegation that Defendants "knew that [SunTx LP] did not have the ability to pay and would not have it in the future, because it had no assets, no revenues, and was undercapitalized" and Defendants "promised to guarantee obligations that, at the time of the promise, they knew they had, and would not have, any ability to perform, at any time." Doc. 28 at 11. But, as explained above, this allegation has proven to be false. At the time they signed the Guarantees, Defendants (1) knew that SunTx LP had monetizable net assets worth approximately $61 million and (2) intended to use those assets to pay SunTx LP's obligations if necessary. Exhibit 1, Jennings Declaration. As a result, this theory of misrepresentation fails as a matter of law.

### B.     Defendants did not tortiously fail to disclose any fact to Plaintiffs.

Fraud by nondisclosure requires a plaintiff to prove, *inter alia*, that "the defendant concealed or failed to disclose a material fact when a duty to disclose existed." *United Teacher Assocs. Ins. v. Union Labor Life Ins.*, 414 F.3d 558, 566 (5th Cir. 2005). Defendants' motion to dismiss argued that (1) Plaintiffs "have not sufficiently alleged that there were material facts that

required disclosure" and (2) Defendants had no duty to disclose. Doc. 28 at 13–14. The Court rejected both of these arguments, ruling that (1) "the plaintiffs have sufficiently alleged that the defendants wrongfully omitted from the payment guarantees the information that SunTx [LP] did not have, and would not have, the ability to make the payments called for by the guarantees" and (2) Defendants had a duty to disclose because, "by committing SunTx Limited to pay the guarantees while knowing that SunTx Limited had, and would in the future have, no ability to pay, the defendants voluntarily disclosed some information without disclosing the whole truth and conveyed a false impression through a partial disclosure." *Id.*

Thus, Plaintiffs' fraud by nondisclosure claim depends solely on the allegation that Defendants falsely represented that SunTx LP had the ability to pay its obligations under the Guarantees. But, as explained above, Defendants did not make such representations in the Guarantees, no such representations would have been actionable, and any such representations would have been true anyway. Plaintiffs' fraud by nondisclosure claim therefore fails for the same reasons as its affirmative misrepresentation claims.

## III. Defendants conclusively establish affirmative defenses.

"For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006). Defendants meet this burden for limitations and res judicata.

### A. Plaintiffs' tort claims are barred by limitations.

Plaintiffs' tort claims are based on purported misrepresentations and omissions in November 2015 and February 2016. Plaintiffs' claims have two- or four-year statutes of limitations. Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(4), 16.051. Plaintiffs did not file the instant suit until December 20, 2021. Doc. 1. Plaintiffs' claims are therefore barred by limitations.

Defendants expect Plaintiffs to argue that the tolling doctrines of the discovery rule and fraudulent concealment save their claims from limitations. Complaint at ¶ 75. These two doctrines have different elements, but they share a key feature: any tolling terminates upon discovery of the plaintiffs' injury. *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 307 (5th Cir. 2014) ("Fraudulent concealment tolls limitations until the claimant, using reasonable diligence, discovered or should have discovered the injury."); *Regency Field Servs. v. Swift Energy Op.*, 622 S.W.3d 807, 817 (Tex. 2021) ("Similarly, when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury."); *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992) (Under the discovery rule, "limitations begin to run when the fact of injury is known, not when the alleged wrongdoers are identified.").

According to Plaintiffs, they were injured by providing goods and services to the Ranger Contractors without compensation because Plaintiffs believed SunTx LP would pay for those goods and services under the Guarantees. Complaint at ¶¶ 29, 37, 44, 53. Plaintiffs sued SunTx LP on February 20, 2017 for breach of the Guarantees. Exhibit 9, Prior Complaint. By that point, Plaintiffs necessarily knew that (1) they had suffered a legal injury by providing goods and services without compensation and (2) SunTx LP's nonpayment was a cause of that injury. Plaintiffs therefore discovered their injuries no later than February 20, 2017. This means that Plaintiffs' negligent misrepresentation claims were barred no later than February 20, 2019, and Plaintiffs' fraud claims were barred no later than February 20, 2021. Plaintiffs did not file the instant suit until December 20, 2021, Doc. 1, so those claims are now barred by limitations.

### B.  Plaintiffs' tort claims are barred by res judicata.

"When a prior action is brought in diversity in federal court, the federal law of res judicata governs in a second suit brought in diversity." *Commercial Box & Lumber Co. v. Uniroyal, Inc.*,

623 F.2d 371, 373 (5th Cir. 1980). Under this doctrine, "a judgment in a prior suit bars a subsequent cause of action between the same parties not only as to all matters litigated in the first suit but also as to all issues that could have been litigated regarding the same cause of action." *Id.* The application of res judicata is a question of law for the Court. *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).

The elements of res judicata are "(1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Ellis v. Amex Life Ins.*, 211 F.3d 935, 937 (5th Cir. 2000). There is no dispute over this Court's competence to hear the 2017 Lawsuit or the finality of the judgment it rendered. And, because Plaintiffs use the judgment in the 2017 Lawsuit as their sole damages model in this suit, Plaintiffs cannot dispute that a 2017 suit to enforce the Guarantees is part of the "same transaction" as a suit for alleged misrepresentations contained in those same Guarantees. *Ellis*, 11 F.3d at 938.

Thus, the only real dispute in this case is the identity of the parties between the two lawsuits. "A strict identity of parties is not required to satisfy the first element of res judicata; it is sufficient for the parties in both actions to be in privity with one another." *Chavers v. Hall*, No. 4:10-cv-03922, 2011 WL 2457943, at *3 (S.D. Tex. June 16, 2011). For example, "privity exists where the non-party controlled the prior litigation." *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). Further, privity exists if "the non-party's interests were adequately represented by a party to the original suit." *Butler v. Endeavor Air, Inc.*, 805 F. App'x 274, 277 (5th Cir. 2020) (not designated for publication). "Adequate representation may occur where a party

to the original suit is so closely aligned to the non-party's interests as to be his virtual representative." *Id.* at 277–78 (internal quotations omitted).

In *Butler*, for example, Butler brought two suits based on identical facts against Delta Air Lines and Endeavor Air, Inc. *Id.* at 275–76. Endeavor is a wholly-owned subsidiary of Delta. *Id.* at 278. Butler lost his suit against Delta, so Endeavor moved for summary judgment the suit against it based on res judicata. *Id.* at 276. The trial court granted summary judgment, and Bulter appealed. *Id.* at 277. The Fifth Circuit found that, given the relationship of the parties and the claims, Delta and Endeavor were in privity:

> Here, Delta was so closely aligned to Endeavor's interests in the Delta Case that it acted as Endeavor's virtual representative. First, Endeavor was a wholly owned subsidiary of Delta. Second, the claims against Delta in the first case and Endeavor in this case arise out of the same set of facts: A.B.'s unaccompanied flight on Delta flight 3329, and the decision by Delta employees to release A.B. to her grandmother, Jimenez, rather than to Pierce. The claims against Delta and Endeavor are virtually identical: breach of contract, promissory estoppel, and various forms of negligence. Butler tried to add Endeavor as a defendant in the first case, and only when that attempt was denied (because his request was too late) did Butler file this second action. That Delta and Endeavor's interests were thus identical is underscored by the fact that Delta stipulated in both cases that, were liability against Endeavor to be found, Delta would accept the liability. On these facts, we conclude that Delta virtually represented Endeavor's interests in the Delta Case, thus satisfying the first factor in the res judicata analysis.

*Id.* at 278.

Similarly, in *Lubrizol*, Lubrizol sued Exxon in a New Jersey federal court for patent infringement. *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1281 (5th Cir. 1989). The New Jersey court entered a protective order that restricted Exxon's access to and use of certain of Lubrizol's confidential information. *Id.* Lubrizol believed Exxon violated the protective order and moved for sanctions. *Id.* at 1281–82. The parties settled before the hearing on the motion for sanctions, and the New Jersey court dismissed the case with prejudice. *Id.* at 1282. Lubrizol then sued Exxon and two Exxon employees in the Southern District of Texas for fraud, alleging "affidavits filed in New

Jersey contained false statements and that the two [employees] made misrepresentations to Lubrizol's experts." *Id.* Exxon and the employees moved to dismiss on res judicata grounds. *Id.* The trial court treated the motion to dismiss as a motion for summary judgment, then denied summary judgment "because it appeared that the same rights and duties were not at issue or litigated before the New Jersey court." *Id.* The parties then began what was to be a six-week trial. *Id.* Lubrizol's second witness "testified that the attorneys' fees incurred in connection with the [protective order] dispute in the New Jersey case were settled and dismissed, but that $40,000 in expert fees were not settled and dismissed." *Id.* This prompted the trial judge to *sua sponte* "interrupt[] the testimony" of the witness and grant summary judgment from the bench. *Id.*

On appeal, the Fifth Circuit considered whether the employees could use the New Jersey suit as res judicata. The Fifth Circuit recognized that it "[m]ost other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." *Id.* at 1288. The court ultimately concluded that, because Exxon's liability for the protective-order-dispute in the New Jersey court was based on the conduct of the employees being sued in the Texas suit, the Texas employees were in privity with Exxon. *Id.* at 1289. The employees therefore could not be sued for claims Lubrizol failed to resolve when it sued Exxon in New Jersey. *Id. See also Chavers*, 2011 WL 2457943, at *4 (holding that a prior suit against a city for a civil rights violation barred a subsequent suit for the same civil rights violation against police officers who were "the agent[s] of and acting under the authority of" the city).

Plaintiffs previously sued SunTx LP to enforce obligations in the Guarantees. Plaintiffs now sue SunTx LP's general partner and two of its officers for misrepresentations allegedly made in the Guarantees themselves with a damage model consists of every dollar awarded in the 2017

Lawsuit—including attorneys' fees and prejudgment interest that were not even compensatory damages. Defendants controlled SunTx LP at the time of the Guarantees and the 2017 Lawsuit. Exhibit 1, Jennings Declaration. Defendants are in privity with SunTx LP, so the 2017 Lawsuit is res judicata as to Defendants. Thus, Plaintiffs needed to sue Defendants at the same time Plaintiffs sued SunTx LP. Plaintiffs chose a two-step approach so that they could use liability established against SunTx LP to make the second suit easier because—according to Plaintiffs—the original judgment is binding on SunTx LP's privies such as Defendants. This is the precise strategy res judicata seeks to prohibit, and the Court should grant summary judgment.

## Conclusion

Plaintiffs have no evidence that Defendants made a false representation, failed to disclose a true fact, had a duty to disclose anything at all, relied on any misrepresentation, or suffered any damages. Defendants have conclusively proven that they did not make any misrepresentations about SunTx LP's intention to comply with the Guarantees at the time Defendants signed them. And the alleged misrepresentation about SunTx LP's ability to pay fails because (1) the uncontradicted evidence shows that SunTx LP had sufficient assets to cover any obligation; (2) the only representations about SunTx LP's assets came from third parties; and (3) any statement about SunTx's ability to pay contingent, unknown future obligations was an opinion. Plaintiffs necessarily discovered their claims by the time they sued SunTx LP in February 2017, so those claims were barred by limitations before Plaintiffs sued Defendants in December 2021. Because SunTx LP and Defendants are in privity, that prior lawsuit bars Plaintiffs from suing Defendants now for transactionally-related claim.

Defendants pray that the court grant take-nothing summary judgment against Plaintiffs' tort claims. Defendants further pray for all other relief to which they are entitled.

Respectfully Submitted,

**Meade & Neese LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
Texas Bar No. 24032854
Samuel B. Haren
Texas Bar No. 24049899
2118 Smith Street
Houston, Texas 77002
(713) 355-1200
ameade@meadeneese.com
sharen@meadeneese.com

**Attorneys for Defendants**

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record by electronic service on January 10, 2023.

| | |
|---|---|
| Matthew C. Guy | matthew.guy@arlaw.com |
| Matthew A. Copeland | matt.copeland@arlaw.com |
| Amanda L. Sanders | amanda.sanders@arlaw.com |
| **Attorneys for Plaintiffs** | |

*/s/ Samuel B. Haren*
Samuel B. Haren