**EXHIBIT**

**1**

### In the United States District Court
### Southern District of Texas
### Houston Division

| | |
|---|---|
| **West African Ventures Limited, Sea Trucks Group FZE**<br>Plaintiffs<br><br>v.<br><br>**Ned M. Fleming, III; Craig Jennings; SunTx Capital II Management Corp.**<br>Defendants | **Civil Action No.**<br><br>**4:21-cv-04124** |

### <u>Jennings Declaration</u>

My name is Craig Jennings. My address is c/o Andrew Meade, Meade Neese & Barr LLP, 2118 Smith, Houston, Texas 77002. My date of birth is 10/18/1958. I declare under penalty of perjury that the statements herein are true, correct, and of my own personal knowledge obtained through my personal dealings in this matter.

1.  I have reviewed Defendants' Motion for Partial Summary Judgment (the "Motion"). This Declaration will use terms as defined in the Motion. Exhibit 11 to the Motion is a true and correct copy of the auditor's report and associated financial statements for SunTx Capital Partners II, LP ("SCP"). Exhibit 12 to the Motion is a true and correct copy of the auditor's report and associated financial statements for SunTx Capital Partners II Dutch Investors, L.P. ("SCPDI").

2.  I am the Chief Financial Officer with Defendant SunTx Capital II Management Corp ("SunTx GP") and SunTx Capital Partners II GP, LP ("SunTx LP"). Defendant Ned N. Fleming is the Chief Executive Officer of SunTx GP and SunTx LP. At all relevant times, Fleming and I, as well as others, controlled SunTx LP through SunTx GP.

3.  SunTx GP is the general partner of SunTx LP. SunTx LP, in turn, manages a private equity fund known as "Fund II." At all relevant times, Fund II owned interests in numerous assets, including (indirectly) Ranger Offshore, Inc. ("Ranger Offshore"); Ranger International, Ltd. ("RIL"), and Ranger Subsea Nigeria, Ltd. ("RSNL"). RIL and RSNL (together, the "Ranger Contractors") were contractors for offshore oilfield work in Nigeria. The Ranger Contractors would bid on projects for large oil companies, hire local subcontractors for certain jobs, and use the proceeds from its customers to pay those subcontractors.

4.  In 2015, Shell hired the Ranger Contractors to perform work on an offshore pipeline project in Nigeria (the "Shell Project"). Ranger Offshore negotiated the form of the Shell Guarantees with Plaintiffs, and SunTx LP had no direct contact with Plaintiffs in the process of that negotiation. Ranger Offshore largely conducted these negotiations through its General Counsel, Jim Lam, and its Chief Financial Officer, Chris Guinta. Lam and Guinta did not have a position with SunTx GP, SunTx LP, or any other SunTx entity.

5.  Separately, Conoil hired the Ranger Contractors for a different undersea pipeline project. As before, only Ranger Offshore (including Lam and Guinta) had any direct contact with Plaintiffs; SunTx LP did not negotiate with Plaintiffs at all.

6.  As of fall 2015, the overall SunTx family of companies had tens of millions of dollars of committed but uncalled capital from limited partners. But SunTx LP had no committed but uncalled capital from limited partners. Instead, SunTx LP exists to serve as the general partner of Fund II. Except for a small bank account used for overhead expenses, SunTx LP's sole asset is a carried interest in Fund II. SunTx LP's carried interest in Fund II was a right to 20% of the profits from Fund II to the fund's investors. Thus, the value of this carried interest in Fund II is necessarily tied to the value of Fund II itself. Prior to liquidation of the relevant assets, SunTx LP's carried interest was reflected in its Fund II capital accounts.

7.  Fund II comprised investments in SCP and SCPDI. Because SCP and SCPDI had outside investors, outside accountants audited those entities every year. Thus, the Court can know the precise value of Fund II—and SunTx LP's carried interest—as of December 31, 2015. With minor variations, SunTx LP's value on the dates of the Guarantees was almost identical to the value as of the December 31, 2015 audit date. *Id.*

8.  Exhibit 11 to the Motion shows that, at the time of the Guarantees, SCP invested in five entities. SCP had total assets worth $322,465,706, of which $105,084,592 was attributable to various Ranger entities. SCP's investments appreciated in value, and by December 31, 2015, SunTx LP's SCP capital account was net positive $46,836,981. Exhibit 12 to the Motion shows that, at the same time, SCPDI had total assets worth $163,395,056, of which $53,316,322 was attributable to various Ranger entities. Thanks to appreciation in value of SCPDI's investments, SunTx LP's SCPDI capital account was net positive $14,149,438 on December 31, 2015. Together, these capital accounts show that, at the time of the Guarantees, SunTx LP had a carried interest worth at least net $61,986,419.

9.  As of the execution of the Guarantees, SunTx LP was ready, willing, and able to monetize this carried interest by borrowing against or selling a portion of the interest to a third party. The simplest mechanism for monetization would be distributions from Fund II itself. Further, through its extensive dealings in the private equity industry, SunTx LP was aware of lenders and potential purchasers who would have been willing to loan money secured by or to outright acquire portions of SunTx LP's carried interest. SunTx LP could likely not have used this carried interest to raise a full $61 million on short notice. But SunTx LP could have converted its carried interest (whether through sale or borrowing-against) into at least $40 million. I base these statements on my education, skill and experience in the private equity industry, including 23 years as Chief Financial Officer of various SunTx entities.

10.  The Ranger Contractors incurred obligations to Plaintiffs in the course of the Shell and Conoil Projects. The Ranger Contractors intended to pay those obligations with amounts received from Shell and Conoil. But Shell and Conoil ultimately refused to pay the Ranger Contractors. This left the Ranger Entities unable to pay all amounts purportedly due to Plaintiffs. At the time SunTx LP signed the Guarantees, it had at least $61 million in net assets represented by the carried interest in Fund II. But that value slowly declined over time as its investments— including but not limited to Ranger Offshore—lost money and as the businesses faltered. SunTx LP was thus unable to pay its obligations under the Guarantees when Plaintiffs called the Guarantees.

11.  By the time Plaintiffs won the 2017 Lawsuit, SunTx LP's carried interests and other assets had declined in value from over $61 million on December 31, 2015 to approximately $17,000 on December 31, 2020. SunTx LP thus could not satisfy the judgment against it.

12.  At the time Defendants signed the Guarantees, the financial records, including audited financial statements, of Fund II gave us a reasonable understanding of SunTx LP's current assets. Defendants could estimate what those assets would be on a particular date in the future, but that estimate would become less certain as the date in question moved further into the future. For example, if I knew on December 31, 2015 that SunTx LP's carried interest was worth $61 million, I could confidently estimate what the value of that interest would be on January 1, 2016. An estimate of what that value would be on January 1, 2020 would be far less certain and constitute little more than educated speculation.

13.  At the time SunTx LP executed the Guarantees, SunTx LP and Defendants intended for SunTx LP to honor the Guarantees when necessary. SunTx LP only failed to honor the Guarantees because, by the time payment became due, SunTx LP no longer had the assets to satisfy the Guarantees.

14.  At the time SunTx LP executed the Guarantees, I believed SunTx LP's obligations thereunder would be *de minimus* as the Ranger Contractors would have most likely fully paid all amounts due. I did not expect, nor would it have been reasonable for me to have expected, that SunTx LP would have ultimately owed several million dollars.

Further Declarant sayeth naught.

December 30, 2022.

Craig Jennings